# ZUMAULT v. KANSAS CITY SUBURBAN BELT RAILROAD COMPANY AND KANSAS CITY & INDEPENDENCE AIR LINE COMPANY, Appellants.

### Division Two, June 9, 1903.

1. **Bill of Exceptions:** IN WHICH DIVISION OF COURT FILED. Where there are several divisions of the circuit court of the county in which the cause was tried, but only one clerk, and his assistants in charge of the various divisions are his deputies, the filing in vacation of the stipulation for an extension of time in which to file the bill of exceptions in any one of the divisions of said court, is a compliance with the statute. In such case the appeal will not be dismissed or the judgment affirmed because the stipulation was not filed in the particular division in which the judgment was rendered.

2. ———: COPYING STIPULATIONS. Because the stipulation for an extension of time in which appellant was allowed to file his bill of exceptions was not copied in the bill of exceptions, the judgment will not be affirmed without a proper motion, if the abstract shows that it was filed on a certain day in vacation in a division of the court other than that in which the judgment was rendered, and that an entry of its filing there was made on the record for that division. In such case the point should be raised by a motion of some kind.

3. **Contributory Negligence:** DEFINITION. Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.

4. ———: BAR TO RECOVERY. If the plaintiff or party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of defendant's negligence, but did not, the case is one of mutual fault, and the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof.

5. ———: ———: ACTS OF OMISSION OR COMMISSION. It matters not whether plaintiff's contributory negligence consists in his participation in the direct cause of his injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether

of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong.

6. ————: SITTING DOWN ON PLATFORM: ORDINARY CARE: ANTICIPATING PERIL. Plaintiff, a man of mature years, in possession of all his faculties, with good eyes and hearing, familiar with the movements of trains, went, near midnight, to a platform of a small station within a corporate city, for the purpose of taking passage on a train. For at least once a week for a year he had taken the train which he intended to board and which was due about the time he arrived at the platform. Momentarily expecting the arrival of this train, which he intended to flag and take passage on, he sat down, according to his own testimony, within five or six inches of the platform's edge, turned his face to the east when he was expecting a train from the west, and either fell asleep, or from some other cause became entirely oblivious to his surroundings, when by looking he could have seen an approaching train. The train he intended to take had in fact already passed, but that he did not know, and while sitting there waiting for it he was struck by an irregular or "back-over" train on its way from the west to the car shops for the night. This train did not usually stop at this station, did not carry passengers, nor was any train due there at the time of the accident which did, and there was no reason why the engineer should have anticipated the presence of any passenger on the platform. *Held, first,* that while plaintiff had gone to the platform in good faith, he was guilty of contributory negligence that was the proximate cause of his injuries, in sitting on the platform in such a way that a passing engine struck him; *second,* those in charge of the train did not owe him ordinary diligence to discover his dangerous situation, but being under no obligation to anticipate that he would be there they were only bound to use all reasonable diligence to prevent the accident after actually discovering his peril; *third,* defendant is not liable for his injuries if its servants, by the use of ordinary care, could have discovered his peril in time, by the use of ordinary care, such as sounding the whistle or ringing the bell, to have avoided the accident.

7. ————: WANTONNESS. Where a plaintiff or the party injured was guilty of contributory negligence in sitting down on a platform of a railroad in such dangerous proximity to the track as to be likely to be struck by a passing train, the railroad company is not liable for striking him unless those in charge of the train were guilty of some act showing a willful, wanton or reckless disregard of human life.

8. ————: ————: ANTICIPATING PERSONS ON RAILROAD TRACK. Where the servants of a railroad company in charge of a train are not bound to anticipate persons on the track or in dangerous proximity

Vol 175 mo—19

to it, and the injured person's own negligence placed him in the perilous situation, there can be no recovery, unless those servants could have prevented the injury after actually discovering the peril. In this case, the train was a "back-over" one, returning to the shops after having discharged its passengers at the regular station, and struck plaintiff, who was sitting on the platform of a small station, either very near the track facing the opposite direction and was struck by the bumper beam, or facing the track and was struck by the engine. The train did not carry passengers, nor was any train due at that station at that hour. *Held*, that the engineer was under no obligation to anticipate that plaintiff would be sitting there.

Appeal from Jackson Circuit Court. — *Hon. E. P. Gates*, Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellants.

(1) The law imputed to plaintiff a knowledge that this train did not carry passengers and hence the engineer was not bound to anticipate any person would be upon the platform for the purpose of taking passage. 5 Am. and Eng. Ency. Law (2 Ed.), 571; Logan v. Railroad, 77 Mo. 667; Sira v. Railroad, 115 Mo. 127; Henry v. Railroad, 76 Mo. 288; Railroad v. Nuzum, 50 Ind. 141; Railroad v. Gants, 38 Kan. 608; Beauchamp v. Railroad, 56 Tex. 239; Railroad v. Ludlam, 57 Fed. 48; Railroad v. Pierce, 47 Mich. 277. (2) The plaintiff was clearly guilty of contributory negligence. This bars his recovery in this case, since there was neither allegation nor proof of recklessness, willfulness or wantonness on the part of the persons in charge of the train. Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Teel v. Railroad, 38 S. E. 518; Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 275; Jackson v. Railroad, 157 Mo. 622; Loring v. Railroad, 128 Mo. 349; Maloy v. Railroad, 84 Mo. 270; Railroad v. Townsend, 63 S. W. 994; Price v. Railroad, 84 Md. 506; Railroad v. McDonald, 52 S. W.

649; Smith v. Railroad, 43. S. W. 34; Railroad v. Staggs, 39 S. W. 295; Railroad v. Breadow, 36 S. W. 410; Railroad v. Staggs, 37 S. W. 609; Carrington v. Railroad, 6 So. 910; Bentley v. Railroad, 6, So. 37; Railroad v. Womack, 4 So. 618; Railroad v. Bush, 26 So. 168; Glass v. Railroad, 10 So. 215; Railroad v. Roberts, 23 So. 393; Nave v. Railroad, 11 So. 391; Price v. Railroad, 77 Mo. 508; Railroad v. Lee, 97 Ala. 233; Helton v. Railroad, 12 So. 276; Lyons v. Railroad, 59 S. W. 507; Embry v. Railroad, 36 S. W. 1123; Sims v. Railroad, 28 Ga. 93; Raden v. Railroad, 78 Ga. 47; Railroad v. Hankerson, 61 Ga. 114; Wilds v. Railroad, 82 Ga. 667; White v. Railroad, 84 Mo. App. 411; Skipton v. Railroad, 82 Mo. App. 134; Lien v. Railroad, 79 Mo. App. 475; Lenk v. Coal Co., 80 Mo. App. 375; Covell v. Railroad, 82 Mo. App. 180; Moody v. Railroad, 68 Mo. 470; Turner v. Railroad, 74 Mo. 602; Nelson v. Railroad, 68 Mo. 593; Suigert v. Railroad, 75 Mo. 475; Yarnell v. Railroad, 75 Mo. 575; Powell v. Railroad, 76 Mo. 80; Sims v. Railroad, 28 Ga. 93; Embry v. Railroad, 36 S. W. 1123; Brennan v. Railroad, 83 Fed. 124; Gunderman v. Railroad, 58 Mo. App. 370; Railroad v. Bell, 18 Atl. 561; McGeehan v. Railroad, 24 Atl. 205; Holmes v. Railroad, 97 Cal. 16; Matthews v. Railroad, 24 Atl. 67; Railroad v. Turley, 85 Fed. 369; Railroad v. Martin, 44 S. W. 703; Lenix v. Railroad, 64 Mo. 86; Fletcher v. Railroad, 64 Mo. 484; Gorton v. Railroad, 45 N. Y. 662; Austin v. Railroad, 91 Ill. 35; Kreis v. Railroad, 148 Mo. 321; Burns v. Railroad, 101 Mass. 50; Yancey v. Railroad, 92 Mo. 433; Taylor v. Railroad, 64 Mo. 486; Taylor v. Railroad, 86 Mo. 457; Dlauhi v. Railroad, 105 Mo. 645; Maxey v. Railroad, 113 Mo. 1; Boyd v. Railroad, 105 Mo. 371; Aerkfetz v. Humphreys, 145 U. S. 418; Elliott v. Railroad, 152 U. S. 245; Gardner v. Railroad, 56 N. W. 60; Kelsay v. Railroad, 129 Mo. 362; Watson v. Railroad, 133 Mo. 246; Lane v. Rail-

road, 132 Mo. 4; Allen v. Railroad, 19 Atl. 150; Railroad v. Morris, 62 S. W. 1012; Provost v. Railroad, 28 So. 168; Railroad v. Walker, 49 S. W. 682; Smith v. Railroad, 43 S. W. 34; Settoon v. Railroad, 19 So. 759; Matthews v. Railroad, 23 S. E. 177; Winslow v. Railroad, 42 N. E. 1133; Bradley v. Railroad, 65 N. W. 102; Kirtley v. Railroad, 65 Fed. 386. (3)    The court erred in giving plaintiff's instructions, in modifying defendants' instruction as given by it, and in not giving defendants' refused instructions.   See authorities under point 2.

*John L. Wheeler* for respondent.

(1) The judgment should be affirmed because the stipulation for extension was not filed in the division of the court in which the judgment was rendered, and because it was not copied in the bill of exceptions as required by statute.   Sec. 728, R. S. 1899.   (2) Even though respondent was guilty of negligence in sitting upon the platform in the position he was struck, yet, if the appellants could have avoided injuring him by the use of ordinary care and diligence, such as sounding the danger signals or stopping the train after they saw him, or could have seen him, the verdict in this case should be affirmed.   Morrissey v. Ferry Co., 43 Mo. 384; Brown v. Railroad, 50 Mo. 466; Walsh v. Trans. Co., 52 Mo. 438; Burnham v. Railroad, 56 Mo. 342; Myers v. Railroad, 59 Mo. 231; Sullivan v. Railroad, 97 Mo. 118; Hanlon v. Railroad, 104 Mo. 388; Yancy v. Railroad, 93 Mo. 436; Harlan v. Railroad, 64 Mo. 480; Lenix v. Railroad, 76 Mo. 86; Moody v. Railroad, 68 Mo. 470; Rine v. Railroad, 88 Mo. 396; Maher v. Railroad, 64 Mo. 267; Bergman v. Railroad, 88 Mo. 678; Kellny v. Railroad, 101 Mo. 67; Reardon v. Railroad, 114 Mo. 403; Bunyan v. Railroad, 127 Mo. 18; Chamberlain v. Railroad, 133 Mo. 604; Morgan v. Railroad, 159 Mo. 283; Langan v. Railroad, 72 Mo. 394.   (3) The authorities discussed in the first para-

graph of appellants' brief have no application whatever to this case. Those were cases where passengers did obtain or could have obtained at defendants' depots all the information in regard to the proper train they should have taken. But in violation of the information which they received or could have received, they took trains that did not stop at their destination and were put off by the defendants' servants at some other station. In this case the respondent had no means of ascertaining that his train had passed or was behind time, or that there was such a train as the "backover" running at this hour of the night. The second paragraph of appellants' brief is solely on the question of contributory negligence. Under that paragraph appellants have cited about four pages of authorities. We, with great labor, have waded through all of their citations, and have found nothing to sustain them in the position that plaintiff's contributory negligence bars him of his right of recovery in this case.

BURGESS, J.—This is an action for, twenty thousand dollars damages alleged to have been sustained by plaintiff on the night of the second day of August, 1895, by reason of the negligence of defendants.

The petition alleges:

"That on the dates hereinafter mentioned the said Kansas City, Missouri, was and for many years prior thereto had been a municipal corporation duly created, organized and existing under and by virtue of the laws of the State of Missouri. That from the eastern limits of Kansas City, Missouri, to the Grand Central depot in said city, both defendants herein at all the times herein mentioned, ever since have and now use and occupy the same tracks, depots and platforms and the depot and platform hereinafter mentioned. That the defendants constructed a depot and platform on said railway at a point called Elmdale within the corporate

limits of said city for the use and convenience of their passengers traveling on said roads, and the same were used for said purposes on the dates hereinafter mentioned. That on the second day of August, 1895, at about fifteen minutes after eleven o'clock p. m. plaintiff went to said station and depot for the purpose of taking passage on one of defendant's trains east to a station on said railroad called Milwaukee; that upon his arrival at said station plaintiff sat down upon said platform and while he was in that position, and in the exercise of ordinary care and diligence, a train from the west, composed of a locomotive and cars propelled by steam, managed, operated and propelled by defendants, their agents and servants, carelessly and negligently struck plaintiff on the left side of the head, mashing and splintering the skull, and otherwise seriously and permanently injuring plaintiff as hereinafter stated. That the injuries received by plaintiff as aforesaid were caused by the wrongful act, negligence, carelessness, unskillfulness and default of the defendants, in this: that the servants and agents and employees of defendants at the time and place when and where plaintiff was injured as aforesaid, and whilst so running, conducting and managing said locomotive and cars thereto attached, negligently and carelessly and unskillfully failed to give warning by the ringing of the bell or the blowing of the whistle to plaintiff of the approach of said locomotive and cars thereto attached, as it was their duty to do, after they knew, or by the use of ordinary care might have known, of the danger to which plaintiff was exposed; that at the time and place aforesaid, the agents and servants and employees of defendants whilst running, managing and conducting said locomotive and cars thereto attached, negligently, carelessly and unskillfully struck and injured plaintiff when they knew, or by the exercise of ordinary care might have known of the danger to which plaintiff was exposed; that at the time plaintiff was

injured as aforesaid, the servants, agents and employees of the defendants whilst running, conducting and managing said locomotive and cars thereto attached, negligently, carelessly and unskillfully failed to stop said locomotive and cars in time to avoid collision with plaintiff after they knew, or by the use of ordinary care might have known of the danger in which plaintiff was placed; that the defendants had carelessly and negligently permitted the weeds on their right of way, on the south side of their south track, and west of said depot and platform, to grow so high that they obstructed the view of an approaching train from the west to a passenger on said platform, and obstructed the view of defendants' agents and servants in charge and control of the train which struck plaintiff, and said agents and servants were thereby prevented from seeing the plaintiff in time to have avoided the accident; that defendants carelessly and negligently used and maintained said depot and platform on the night aforesaid without having any light in or about the same; that defendants carelessly and negligently constructed the same so near the track of said railway that parts of the engine and cars of defendants would pass over said platform made for the use and occupancy of the passengers, and carelessly and negligently maintained, caused to be maintained and suffered and permitted said platform to be used and remain in such dangerous condition at the times aforesaid, when they knew of its dangerous condition or by the exercise of ordinary care might have known of its dangerous condition. That by reason of the injuries aforesaid it became necessary to remove a large amount of plaintiff's skull and brains, on the left side of his head, and the same was removed, and plaintiff's mind was permanently injured and affected, so that he can never recover proper use of the same, and by reason and means whereof plaintiff's nervous system was

greatly and permanently injured and impaired, causing plaintiff to become sick, weak, and permanently disabled and debilitated, and to suffer from constant and serious nervous diseases and disorders, and permanently and seriously impaired the hearing of his left ear; and by means and by reason whereof plaintiff was greatly, seriously and permanently disabled for life. That by reason and in consequence of the injuries inflicted upon, and sustained by, plaintiff as aforesaid, through the negligence, recklessness and unskillfulness and carelessness of defendants as aforesaid, and without any negligence on his part, plaintiff has suffered, and still suffers, and will ever continue to suffer great pain and discomfort, and has been, and will ever be hindered, disabled, disqualified and prevented from transacting and attending to his business and affairs, to the damage of plaintiff in the sum of nineteen thousand five hundred dollars. That by reason of the injuries to plaintiff as aforesaid, he has been compelled to expend, and has expended, and will continue to expend large sums of money for medical attendance, hospital bills, medicines, nursing and care, to-wit, the sum of five hundred dollars.''

The defendants answered separately, denying generally all allegations in the petition, accompanied with a plea of contributory negligence and the misjoinder of defendants.

The trial resulted in a verdict and judgment for plaintiff in the sum of five thousand dollars, from which defendants appeal.

Briefly stated the facts are that:

''The Kansas City Suburban Belt Railroad Company owns a line of railroad extending from the Second and Wyandotte street depot in Kansas City to a point several miles east, known as the Air Line Junction, located near the point where the Blue river flows into the Missouri. The Kansas City and Inde-

pendence Air Line owns a line of road from this junction to Independence, Missouri. The Belt Line does a switching business. It owns no equipment except engines, and its revenue is derived from hauling and switching the cars of other companies. The Air Line operates passenger and freight trains between the Second and Wyandotte station in Kansas City and Independence, Missouri. It has a trackage contract whereby it is permitted to use the tracks of the Suburban Belt between the Air Line Junction and the Second and Wyandotte street station. Elmdale is a flag station on the line of the Suburban Belt road in the extreme eastern part of the city, in a sparsely settled locality, about three miles east of the Second and Wyandotte street depot. The station itself consists of a platform partially covered by a hood-shaped protection for passengers. Still east of Elmdale station is the roundhouse used jointly by the Air Line and the Belt company.

"Plaintiff was injured by a Belt Line train known as the 'back-over.' The last train from Independence to Kansas City was accustomed to leave Independence at about half past eleven at night, and would reach the Second and Wyandotte street depot a few minutes before midnight. After discharging its passengers the hostler from the roundhouse and his fireman would take charge of the train and take it to the roundhouse for the night. While the train was running from the Second and Wyandotte street station to the roundhouse, it would be known as the 'back-over.' The 'back-over' did not carry passengers, and made no stops except at railroad crossings.

"On the night of August 2, 1895, plaintiff started for the station to take a train which he expected would pass on the Air Line going east at about 11:45. It was a moonlight night but the moon was nearly down; its time for setting that night was 1:49 a. m. As he approached the Elmdale station, a train passed

going east, which was probably the train he intended to take. Upon reaching the station his statement is that he sat down upon the east end of the platform, five or six inches from its edge next to the track, with one foot upon the upper step leading to the platform and the other foot upon the lower step. He was facing east or northeast. In this position he sat and waited for a train which he expected to arrive from the west. Other evidence was to the effect that he sat upon the edge of the platform next to the track. The evidence was conflicting as to the exact position. The last that the plaintiff remembers was that he was seated in the position above stated. What happened afterwards he does not know, except that sometime afterwards he came to his senses in the hospital and found that he had been injured by being struck by a train.

"He had been struck by the 'back-over.' The last train from Independence to Kansas City had discharged its passengers at Second and Wyandotte, and was in charge of the hostler, and was being taken to the roundhouse to be put up for the night. The train was made up as a regular train, consisting of an engine and two empty coaches. The engine was at the front end of the train headed in the direction in which it was going. The speed of the train was from eight to twelve miles an hour. The hostler did not see the plaintiff until the engine was almost upon him, and it was too late to stop; when he did see the plaintiff he was sitting in the shadow of the station on the edge of the platform facing the track, his legs between the edge of the platform and the rails. As soon as he saw the plaintiff he applied the air brakes and brought the train to a standstill. The hostler stated he was sitting on the right-hand side of the cab keeping a lookout ahead for the train, but did not see respondent until within fifteen or twenty feet of him or just about the time he struck him; that as soon as he saw him he knew it was a man and that the engine would strike

him if it were not stopped, and immediately he put on the appliances to stop the train, but it ran about 170 feet beyond plaintiff before it stopped. The defendants' witness, the civil engineer who took measurements of the depot, testified that the roof of the depot was only seven feet above the platform.

"John Burns, a witness for defendants, testified that he was the regular fireman running this engine between Kansas City and Independence; that he had passed the station with this same engine and train several times that night and had passed it only a few minutes before the injury to plaintiff. He testified on cross-examination that he could see a passenger on the depot platform for a distance of a block and a half.

"McGowan, the coal heaver on the engine, said as soon as the engine began to check up, Cooper, the hostler, said that he had struck a man sitting on the steps of the platform.

"Dunning, on behalf of the plaintiff, testified that he could have stopped the train running twelve miles an hour within thirty feet.

"Metzger testified that he could have stopped it running at that rate within from twenty to thirty-five feet, and running at six to eight miles per hour, in one revolution of the driver, or about fifteen feet.

"In behalf of the defendant, Cooper, the hostler, who was running the engine, claimed it could have reasonably been stopped within 140 or 150 feet.

"Slade, on behalf of defendant, testified that running from eight to ten miles an hour, the train could have been stopped in from eighty to 100 feet, but admitted that he had told one of plaintiff's attorneys that it could have been stopped within fifty feet.

"Murray, in behalf of defendants, testified that it could have been stopped, running from eight to ten miles per hour, in from ninety to ninety-five feet, but admitted on cross-examination that he had never made any tests, but had based his estimate on Westinghouse's

rules laid down in his book on air-brakes, according to reliable tests.

"It was admitted by both McGowan and Cooper that the whistle was neither blown for the station nor to warn Zumault of his danger. Cooper said he only whistled for the road-crossing that was below the depot about four or five hundred feet. McGowan said this whistle was blown about the time they got to the trestle west of the depot. This trestle was 1,925 feet west of the depot, or about a half mile before the train reached the depot. McGowan said that the engineers on the regular trains usually blew the crossing whistle before the train reached the trestle going east to the station, and whistled after they crossed the trestle; that the crossing whistle in this case was blown, but that the station whistle was not. But that this whistle was blown is disputed by the testimony. Cole, the civil engineer, who surveyed this location and took points and measurements, said that there was no road or street crossing at or near Elmdale station. McGowan says he usually rang the bell in passing along there and thought he rang it on that night, but that they did not ring it to warn Zumault because they did not know he was there.

"Plaintiff testified that he was listening for the approach of the train at the time that he was struck, and that no whistle was blown or bell rung as the train approached the depot. The plaintiff was found lying immediately east of the east end of the platform, with a severe injury to the left side of his head, and was at once taken to the hospital. The 'back-over' started from the Second and Wyandotte street station on that evening at a few minutes after twelve, and the accident occurred about ten or twelve minutes later.

"It was claimed by the plaintiff as grounds of negligence that the platform was so near the track that the pilot-beam, or the cylinder of the engine, projected over it some four or five or six inches, and ex-

periments were introduced showing observations made by some of the plaintiff's friends by sticking up a weed in a crack of the platform and watching the engine as it passed by at full speed. Measurements made, however, demonstrated that no part of the engine projected or could project over the platform. The court permitted another experiment to be shown in evidence, made by the plaintiff's friends some days or weeks or months after the accident, it not being shown the exact amount of time that had elapsed. They placed a man on the platform one moonlight night, and then walked up the track west of the station, and testified that knowing the man was there they could distinguish his outline some 320 feet west of where he was located. The case went to the jury upon the question whether the engineer, by the exercise of ordinary care, might have seen the plaintiff sitting on the platform in a position of danger in time to have stopped the train. The defendants' contention was that the engineer did not see the plaintiff until it was too late to stop the train, and that he was under no obligation to anticipate the plaintiff's presence at the point in question. There was no evidence that this particular train, the 'back-over,' had ever carried passengers or stopped at that station or that people were in the habit of coming to the station or being upon the platform for the purpose of taking it or were in the habit of being there at that hour of the night. It is the contention of the defendants that under all the facts and circumstances of the case, the court should have directed a verdict for the defendant."

The court on the part of the plaintiff instructed the jury as follows:

"1. The court instructs the jury that, if you believe from the evidence that the defendants, their agents and servants in charge of the locomotive that did the injury, saw, or by the exercise of ordinary care, could have seen the plaintiff upon the platform,

and so near the track as to be in danger of being struck by said engine, and thereafter could have prevented the injury to plaintiff by the exercise of ordinary care, such as sounding the danger signals or stopping the train, but failed or neglected to do so, then your verdict must be for the plaintiff in a sum not to exceed twenty thousand dollars, although you may believe plaintiff was asleep at the time he was injured.

"2. The court instructs the jury that notwithstanding you believe from the evidence that the plaintiff negligently placed himself in a dangerous situation on the defendants' platform, if such situation was one of danger, and was negligent in not observing the defendants' approaching train, or was negligent in any other manner, yet if you further believe from the evidence that defendants' servants operating such approaching train saw plaintiff was in a dangerous situation, or by the exercise of reasonable care on their part, might have discovered his situation and that the same was dangerous, in time to have averted the injury by using ordinary diligence, then your verdict should be for the plaintiff; and in making up your verdict as to the care and diligence to be exercised by defendants' servants in the premises, you should take into consideration all the facts and circumstances connected with the case.

"4. The court instructs the jury that if you find for the plaintiff, then in estimating his damages you may take into consideration all of the mental and physical pain and anguish, already suffered by plaintiff, and all future mental and physical pain and anguish, if any, that will result to him from said injury. Also his loss of time and the value thereof, since the date of his injury; and if the jury find that his injuries are permanent and lasting in their character and effect, and that they will in future disable him from earning money and making a support, or will impair his ability to do so, you should take these facts into consideration,

and should estimate the value of time and service that
he may thereby lose during his life. And the jury
should assess plaintiff's damages at such sum as in
their judgment will compensate him for all his losses
and sufferings, both past and future, that has or will
result to him, as well as the money he has expended
or will have to expend by reason of his injuries, not
exceeding the sum of twenty thousand dollars, the
amount claimed in plaintiff's petition.''

To the giving of which said instructions on the
part of the plaintiff, the defendants then and there at
the time duly objected and excepted.

At the request of the defendants the court in-
structed the jury as follows:

''2. The court further instructs the jurors that
they are the exclusive judges of the weight of the evi-
dence and of the credibility of the witnesses. That in
making up their verdict they should consider the de-
meanor of the witnesses on the stand, their opportunity
for observing the facts testified to by them, their inter-
est, if any, in the case, the physical facts in evidence,
together with all the other facts and circumstances so
in evidence; and you are further instructed that the
burden of proof is on plaintiff before he can recover in
this case, to establish by the greater weight of the
credible and satisfactory evidence, negligence of de-
fendants or of either of them, relied on by plaintiff and
authorized by the instructions of the court in this case
as grounds for plaintiff's recovery in this action.

''3. By the term 'dangerous situation' of plain-
tiff as used in other instructions given in this case, is
not meant simply that plaintiff was 'on the platform
mentioned in the evidence' or was 'in a sitting position
thereon,' but it is meant that plaintiff was either 'on
the edge of said platform or so near its edge' as to
subject him to being struck by the passing engine or
train.''

The defendants asked the court to give the following instructions, which were refused:

"1.    The court instructs the jury that it was the duty of the plaintiff, when he went to the Elmdale station mentioned in the evidence, to stay off the railroad tracks and out of the way of approaching trains, and if you find from the evidence that he went to said station and sat down on or near the edge of the platform adjoining the railroad track and where a passing engine or train could strike him, and there remained and did not look or listen for an approaching train, and defendant's engineer and servants in charge of the train which struck him, did not see his dangerous situation until it was too late to stop the engine and avoid injuring him, then your verdict will be for the defendant and you will so find.

"6.    The court instructs the jury that if the plaintiff sat down on the platform mentioned in the evidence, at the east end thereof, and within four or six inches of the edge of same next to the railroad track, as testified to by him, or if he sat down on said platform with his feet projecting over the same towards the railroad, as indicated by other evidence in this case, and while in either of such positions he was struck by the passing train and received the injury sued for, he was guilty of such contributory negligence as to preclude his recovery in this suit, and you will return your verdict for the defendant, unless you further find and believe from the evidence that defendants' servants in charge of said train did not, after discovering plaintiff's dangerous situation, use all means at their command consistent with their own safety and, with that of the other persons on the train to stop the same, and thereby avoid striking plaintiff.

"7.    The plaintiff can not recover in this action unless defendants' servants in charge of the train which struck plaintiff, after seeing his situation of danger on the platform mentioned in the evidence, neg-

lected to use all efforts at their command, consistent with their own safety and with the safety of the other persons on the train, to stop the train and thereby to avoid injury to plaintiff.

"10.   The court instructs the jury that under the law applicable to this case, the defendant was not required, when approaching or passing Elmdale station, either to ring the bell or to sound the whistle of its locomotive which struck plaintiff on the night in question, and no recovery can be had for its failure to do so, even should you believe from the evidence it did not do so."

Which said instructions asked by the defendant, the court modified and gave to the jury in their modified form as follows:

"1.   The court instructs the jury that it was the duty of the plaintiff when he went to Elmdale station mentioned in the evidence, to stay off the railroad track and out of the way of approaching trains, and if you find from the evidence that he went to said station and sat down on or near the edge of the platform adjoining the railroad track and where a passing engine or train could strike him, and there remained and did not look or listen for an approaching train and defendants' engineer and servants in charge of the train which struck him, did not see his dangerous situation until it was too late to stop the engine or to sound the danger signals and thereby avoid injuring him, or by the exercise of reasonable care on their part might have discovered his situation and also that the same was dangerous, in time to have averted the injury by using ordinary diligence, then your verdict will be for the defendant.

"6.   The court instructs the jury that if the plaintiff sat down on the platform mentioned in the evidence, at the east end thereof, and within four or six inches of the edge of the same next to the railroad

Vol 175 mo—20

track as testified to by him, or if he sat down on said platform with his feet projecting over the same towards the railroad, as indicated by other evidence in the case, and while in either of such positions he was struck by the passing train and received the injury sued for, he was guilty of such contributory negligence as to preclude his recovery in this suit, and you will return your verdict for the defendants unless you further find and believe from the evidence that the defendants' servants in charge of the said train did not, after discovering plaintiff's dangerous situation, or by the exercise of reasonable care on their part, might have discovered his situation and that it was dangerous, use all means at their command consistent with their own safety and with that of the other persons on the train to avoid striking plaintiff.

"7. The plaintiff can not recover in this action unless defendants' servants in charge of the train which struck plaintiff, after seeing his situation of danger on the platform mentioned in the evidence, or by the exercise of reasonable care on their part, might have discovered his situation, and also that it was dangerous, neglected to use all means at their command, consistent with their own safety, and with the safety of the other persons on the train, to stop the train or to ring the bell or sound the whistle, and thereby avoid injury to plaintiff.

"10. The court instructs the jury that under the law applicable to this case, the defendant was not required, when approaching or passing Elmdale station, either to ring the bell or to sound the whistle of its locomotive which struck plaintiff on the night in question, and no recovery can be had for its failure to do so, even should you believe from the evidence it did not so ring the bell or sound the whistle, unless you further believe from the evidence that after the defendants' servants saw plaintiff in a dangerous position or by the exercise of reasonable care on their part

might have discovered his situation and that it was dangerous, might have rung the bell or sounded the whistle and thereby averted the injury to plaintiff.''

To the refusal of the court to give said instructions numbered 1, 6, 7 and 10, as asked by defendants, and to the giving of said instructions to the jury in a modified form, the defendants then and there at the time duly objected and excepted.

The court, of its own motion, instructed the jury as follows:

''11. The court instructs the jury that all the instructions read to you by attorneys for plaintiff and defendants and by the judge are all instructions of the court.

''12. The court instructs the jury that if you find for the plaintiff your verdict will be in the following form:

''We the jury, find for the plaintiff against the defendants, and assess his damages in the sum of $—.

''If you find for the defendants, your verdict will be in the following form:

''We, the jury, find the issues for the defendants.''

To the giving of which said instructions numbered 11 and 12, by the court of its own motion, the defendants then and there at the time duly objected and excepted.

The defendants also asked the court to give the following instructions:

''A. The court instructs the jury that on all the evidence in this case they will find the issues for the defendant, the Kansas City & Independence Air Line Company, and will so return their verdict.

''B. The jury are instructed that upon all the evidence in the case the defendant, the Kansas City Suburban Belt Railroad Company, is not liable on the cause of action sued for (it not appearing by any substantial evidence in the case that the persons in charge

of the locomotive and train which struck plaintiff were in the service or employment of said defendant at the time of said injury) and your verdict will therefore be for said defendant on the issues in the case.

"C. The court instructs the jury that if they find from the evidence that the engineer and fireman in charge of the train (which struck plaintiff and caused the injuries sued for in this action) were at the time of said injuries in the employment or service of the defendant, the Kansas City & Independence Air Line, and were not in the service or employment of the Kansas City Suburban Belt Railroad Company (defendant herein). then your verdict will be for the latter defendant on the issues in the case, and this is true although you may believe from the evidence that the said Kansas City Suburban Belt Railroad Company paid in the first instance the said engineer and fireman for the services covering the time of plaintiff's injury, provided you further believe from the evidence that said compensation for the services of said employees was repaid by the Kansas City & Independence Air Line to the Kansas City Suburban Belt Railroad Company.

"D. The court instructs the jury that the engineer of defendants' train, which struck plaintiff, was not required to reduce its speed or stop it when approaching Elmdale station for the purpose of ascertaining whether the plaintiff was in a position of danger on or near the edge of the platform; the engineer had the right to presume until he saw to the contrary, that the plaintiff, if sitting in a position of danger on or near the edge of the platform, would exercise his senses of seeing and hearing and thereby ascertain that a train was approaching, and then move to a place of safety and not continue in a place of danger from collision with the approaching train.

"E. The court instructs the jury that although the engineer on defendants' locomotive when approaching Elmdale station, might have seen plaintiff sitting

on the platform of the station, he was not required to nicely gauge or estimate how near plaintiff was to the edge of said platform, but had the right to presume (until he saw or was informed to the contrary) that plaintiff was at a safe distance from the edge of the platform, not so near it as to be struck by the passing train.

"F.   The court instructs the jury that although the engineer on defendant's locomotive when approaching Elmdale station, might have seen plaintiff sitting on the platform of the station, he was not required to nicely gauge or estimate how near plaintiff was to the edge of said platform, but had the right to presume (until he saw or was informed to the contrary) that plaintiff was at a safe distance from the edge of the platform; not so near it as to be struck by the passing train; and if while said engineer was acting on said presumption and without any negligence on his part or on the part of the other employees managing the train in question, plaintiff, while sitting on the edge of said platform, was struck by the cross-beam or cylinder of the locomotive or other part of the passing train, then plaintiff can not recover in this action and your verdict will be for the defendant.

"G.   The court instructs the jury that the mere fact that the conductor in charge of defendants' train which struck plaintiff saw him sitting on the platform mentioned in the evidence and did not thereupon endeavor immediately to stop the train, is not sufficient to authorize a recovery for plaintiff in this case; the jury before so finding for plaintiff must further believe and find from the evidence that said conductor not only saw the plaintiff on the platform, but saw his dangerous situation (that is, that he was so near the edge of the platform as to render it likely that he would be struck by the approaching train), and then failed to use all means at his command (consistent with the safety of himself and the other persons on the

train), to stop the train and avoid the injury to plaintiff.

"H. 'The court instructs the jury that although the conductor of defendants' train, which struck plaintiff,. saw him (before said train reached the platform) sitting thereon, he had the right to presume and to act on the presumption (until he saw or was informed to the contrary), that plaintiff had taken a safe position on said platform, that is, one sufficiently far from the edge of the platform to avoid his collision with said train.

"I.   The court instructs the jury that the fact that the Elmdale station was not lighted on the night of the injury in question, or that the platform may have been constructed too near to the railroad track, or that the engine or trains used in operating said track extended slightly over the platform, or that weeds had been permitted to grow along the track, extending west from Elmdale station, do not afford plaintiff ground for recovery in this action."

Which said instructions numbered A,. B. C, D, E, F, G, H, and I, asked. by defendants, the court refused to give; to which action and ruling of the court defendants then and there at the time duly objected and excepted.

It is insisted by plaintiff that the judgment should be affirmed because the stipulation for extension of time in which defendant was allowed to file its bill of exceptions was not filed in the division of the court in which the judgment was rendered, and because the stipulation is not copied in the bill of exceptions as required by statute.

Section 728, Revised Statutes 1899, provides that the time for filing bills of exceptions may be extended by the court or judge in vacation for good cause shown or within the time the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said

agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the Supreme Court or Courts of Appeals. Plaintiff's abstract shows that the stipulation was filed in Division Two of said court, and, as there is but one clerk of the circuit court in Jackson county, the clerks in charge of the respective divisions of that court are his deputies, and, when the agreement was filed in Division Two, the command of the statute in that regard was complied with.

With respect to the contention that the agreement was not copied in the bill of exceptions as required by the statute quoted, and, for that reason, the judgment should be affirmed, it is sufficient to say, that both plaintiff's and defendants' abstracts show that it was filed by the clerk of said circuit court on March 29, 1900, and that a record of the filing of said stipulation was made on the record then in use in Division Two of said court in vacation, and the fact that it may not be copied in the bill of exceptions is no ground for affirming the judgment. The objection should have been reached by motion of some character.

It is asserted by defendants that plaintiff was guilty of contributory negligence. Contributory negligence is defined, "as a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." [7 Am. and Ency. of Law (2 Ed.), 371; Montgomery Gas Light Co. v. Railroad, 86 Ala. 372; Moakler v. Railroad, 18 Oregon 189; Woodell v. W. Va. Improvement Co., 38 W. Va. 23.]

"If the plaintiff or party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of the defendants' negligence, but did not, the case is one of mutual fault, and the law will neither cast all the con-

sequences upon the defendant, nor will it attempt any apportionment thereof.'' [Cooley on Torts (2 Ed.), 674.] The law will not permit a recovery where the plaintiff by his own negligence, has contributed to produce the injury from which he has suffered. ''And it matters not whether the contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong.'' [Little v. Hackett, 116 U. S. 371.]

The record discloses that plaintiff, a man of mature years, in possession of all his faculties, with good eyes and hearing, familiar with the movements of trains, and, while momentarily expecting the arrival of one at the station upon which he intended to take passage, took a position on the platform so near the railroad tracks that a train could not pass without striking him, turned his face to the east when he was expecting a train from the west, and either fell asleep, or from some other cause became entirely oblivious to his surroundings, when by looking he could have seen the approaching train, or by listening he could have heard it. If such conduct was not under the circumstances contributory negligence then the definition before given is inaccurate, for it clearly falls within it. In fact it is in effect admitted by counsel for plaintiff in his brief, that plaintiff was guilty of negligence in sitting upon the platform in the position he was in when struck, but plaintiff claims that, notwithstanding his negligence, defendants' servants and employees in charge of the train could have avoided injuring him by the use of ordinary care and diligence, such as sounding the danger signals or stopping the train after they saw him, or could have seen him in a perilous position, and having failed to exercise such care and diligence

that he is entitled to recover for the injuries sustained by him by reason thereof.

There was no evidence tending to show any willful, wanton or reckless disregard of human life on the part of the engineer in charge of the train that caused the injury. The engineer was plaintiff's witness and testified that he was at his post of duty, and keeping a lookout ahead of him. His train did not stop at this station, nor was any train due there at that time which carried passengers, so that he was not expecting any person to be on the platform, having no reason to anticipate their presence there. He testified that the first thing he discovered going to Elmdale was a man sitting on the platform with his head very low between his legs; he was facing the track, and was a foot or two from the end of the platform; that just about the time he saw him he struck him; was not over ten or fifteen feet from him when he first saw him, may be not that much; that as soon as he saw him he applied the air; that he did nothing else, because he had no time until the engine struck him; that there was nothing to obstruct his view except plaintiff was sitting in the shade of the platform; that after he saw the man he could do nothing to stop the cars except to put on the emergency brakes which he did.

In this case the contributory negligence of the plaintiff is a complete defense to the action, unless the conduct of the servants of the defendants managing the train was characterized by such willful, wanton, or reckless disregard of human life also contributing to his death as that the defendants ought not to be heard to say that the plaintiff was guilty of such negligence.

In the case of Sharp v. Railroad, 161 Mo. 214, the facts were that the plaintiff who was a section hand in the service of the company, was standing at work so near the track as to be within the line of danger. It was conceded that he was guilty of contributory negligence, but it was insisted, as in the case at bar, that the

engineer saw his position of peril, and by the exercise of ordinary care could have stopped the train and so averted the disaster. The court ruled, however, that there could be no recovery for the reason that there was no claim and no evidence that the conduct of those in charge of the train was willful, wanton or reckless.

The court said:

"He was a man of mature years, in possession of all his faculties, with good eyes, and ears, and with an experience of many years as a section hand on this railroad, was familiar with the movements of its trains and their signals. He was distinctly advised by the passage of section No. 1 with its flags flying, that section No. 2 was coming, and to be on the lookout for it. It did come on time in accordance with the warning given, and its coming was plainly visible for a quarter of mile from the place where the deceased was standing. Nevertheless he continued at his work with a portion of his body within the danger line, facing the track, without paying any attention whatever to the coming train, when by simply turning his head, or even casting his eyes in that direction, he could have seen the train in ample time to have moved out of its way, with the greatest leisure, if he had chosen to do so. The only inference that can be drawn from his conduct is that he either did not look or listen for the train and for that reason was unconscious of its approach, or, being conscious of its approach, he willfully remained on the danger line and thus committed suicide. Indulging the more charitable inference in his favor, he was at least guilty of such inexcusable negligence contributing directly to his death as to preclude a recovery in this action; unless the conduct of the servants of the defendant managing the train, was characterized by such willful, wanton or reckless disregard of human life, also contributing to his death, as that the defendant ought not to be heard to say that the plaintiff was guilty of such negligence. [Tanner v. Railroad, 161

Mo. 497; Morgan v. Railroad, 159 Mo. 262; Kellny v. Railroad, 101 Mo. 67.]

"The facts and circumstances which bring a cause within this exception to the general rule that contributory negligence of the plaintiff or deceased, precludes a recovery, are as variant as the cases in which it has been invoked, and but little assistance can be derived from adjudicated cases, in which the facts are seldom analogous to the one in hand. To arrive at a correct conclusion in a given case, the only rational mode is to put ourselves in the place of the one charged with such conduct and interpret his conduct in the light of all the facts and circumstances by which he was surrounded, and in view of which he acted.

"In this case our inquiry is confined to the conduct of the engineer who had the control and management of section No. 2, and to his conduct, not towards persons on crossings or quasi crossings, or trespassers on the track, but towards a co-employee in the service of the same master, and as familiar with the movements of the master's trains and their signals, on this section of the road, of which he was the track-walker, as was the engineer himself. That he was a competent and skillful engineer is not questioned. That in approaching the place of the accident he was running his train at the usual and ordinary rate of speed, was at his post, on the lookout, and promptly saw the deceased, is undisputed. When he first saw him, however, he saw him in connection with his associates, and as a part of the gang of trackmen some of whom were on and some beside the track, and discovered that those on the track, as the train was approaching them, were, as was their habit, moving out of danger; and knowing that they had been warned to be on the lookout for his approach by the preceding section, he had every reason to believe that all would do so. Upon a nearer approach, however, he discovered from the position of the deceased beside the track, that the whole of his body

was not outside the danger line, and he gave the usual danger signals, at a distance sufficient to have enabled the deceased easily to have withdrawn himself from his exposed position, before the train reached him, as the engineer supposed he had done until he was afterwards informed that the deceased had been struck. Of course it is impossible to say exactly at what distance the engineer discovered the exact situation of the deceased in regard to the danger line or at exactly what distance from him the engineer gave the danger signal. But conceding that the situation of the deceased could have been discovered at such distance as to have suggested the propriety of giving the danger signal sooner than it was given, and that it might have been sounded oftener than it was there was nothing in the situation that seemed to imperatively demand that it should have been sounded sooner or oftener, and certainly nothing in the whole conduct of the engineer on the occasion that could be characterized as a willful, wanton or reckless disregard of human life, such as is necessary to take the case out of the general rule, that contributory negligence precludes a recovery. The court erred in overruling the demurrer to the evidence, and for this error the judgment will be reversed.''

In Tanner v. Railroad, 161 Mo. 497, the plaintiff was so near the track as to be within the danger line as defendant's train pulled into the station at Sedalia. He was injured, and sued for damages upon the ground that the engineer should have seen him and should have stopped the train. The court said:

''Hence it must be held that the plaintiff was guilty of such contributory negligence, in being within the danger line of track number two, when he was struck, as to preclude a recovery, and that the court committed error in sending the case to the jury, unless after the plaintiff had thus put himself in a place of

danger, the conduct of the defendant's employees in the management of the train was characterized by such willful, reckless or wanton disregard of human life, as that the defendant shall not be heard to say that the plaintiff was guilty of such negligence. [Morgan v. Railroad, 159 Mo. 262; Kellny v. Railroad, 101 Mo. 67.] We have looked in vain through all the evidence in this voluminous record, for indicia of such willful, reckless or wanton disregard of human life upon the part of defendant's servants. There was barely evidence enough to take the case to the jury on the main issues tendered by the plaintiff, and while there was some evidence from which the jury might have found that the train came into the depot grounds at a rate of speed slightly in excess of that prescribed by the ordinance, there is none to indicate a reckless rate of speed. It is also true that there was ample evidence from which the jury could have found that the place at which the plaintiff was struck, was plainly visible to the defendant's operatives on the engine, a sufficient distance for them to have safely stopped the train before it reached that place. But conceding all this, what would have been seen by the defendant's servants at that place? No person on track number two on which the train was moving. The plaintiff and several other persons on the platform between that track and track number one, on which train number nine was standing, presumably prudent persons, having a proper regard for their own safety, and if any of them were within the line of danger, from the approaching train, that they would be on the lookout for it, and would step out of its way as it approached them, and leave the way clear, and hence there would be no necessity for stopping the train on their account before reaching the usual stopping place some two or three hundred feet distant, where it did stop. This would have been the conclusion of an ordinarily prudent manager of the movement of such a train, and the defendant's ser-

vants thus managing the train in question can not be convicted of a willful, reckless or wanton disregard of human life, in not stopping the train before it reached the place where plaintiff was struck, because, forsooth, he proved to be an imprudent person without a proper regard for his own safety, and did not step out of the way of the train, as he might easily have done, and as he would have been reasonably expected to do. The demurrer to the evidence ought to have been sustained.''

In Loring v. Railroad, 128 Mo. 349, it was held that where the servants of a railroad company in charge of the engine are not bound to anticipate persons on the track, and the injured person's own negligence placed him in peril, there can be no recovery, unless those in charge of the engine could have prevented the injury after actually discovering the peril.

In the case at bar, it was impossible that the engineer could have prevented the injury after actually discovering the perilous position plaintiff was in, as he used every available means at his command to that end but they proved unavailing. There was nothing in the conduct of the engineer in charge of the train indicative of a willful, reckless or wanton disregard of human life. But on the other hand plaintiff, while in full possession of all his faculties, placed himself within the danger line of cars passing along on the railroad track, and sat there evidently oblivious to all surroundings without even keeping a lookout for approaching trains, until he was struck by the engine in question, and was badly injured. Such conduct can only be characterized as the grossest negligence, which precludes a recovery by plaintiff for damages the result of such conduct.

The judgment should be reversed. It is so ordered.

All of this Division concur.