SCHROEDER, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. STREET RAILWAYS: Collision with Car: Contributory Negligence. Plaintiff was driving on the track of a street railway, and, in order to avoid a car approaching from the rear, turned to the left upon a parallel track, because unable to turn to the right on account of obstructing vehicles, and was struck by a car approaching from the opposite direction. In an action for injuries received in such collision, the evidence tended to show that the colliding car was not in sight when he drove upon the track and that it could have been seen from 150 to 200 feet; that the motorman did not begin to stop the car until within fifteen feet of him; that the car was running at a speed in excess of that limited by ordinance. *Held*, whether the plaintiff was guilty of contributory negligence was a question for the jury.

2. ———: Personal Injuries: Specific Acts of Negligence. In an action for personal injuries, where the petition alleged several specific acts of negligence on the part of the defendant as the cause of the injury, an instruction which did not confine the jury to the acts of negligence alleged, but authorized a verdict for the plaintiff in case they should find the defendant guilty of negligence in any manner, was erroneous.

3. ———: Petition: Contributory Negligence. Where the petition in an action for personal injuries received by collision with a street car alleged that plaintiff saw the car "as" he turned so as to cross the track upon which the collision took place, it does not conclusively convict the plaintiff of contributory negligence; the term "as" means "when" and does not signify that the plaintiff saw the car the moment he turned to drive across, but that he saw it at some time while he was driving across.

4. ———: **Collision: First Appearance of Danger.** In an action for personal injuries received by collision with a street car, an instruction authorizing a recovery on the failure of the motorman to use ordinary care in stopping the car upon the "first appearance of danger," is not objectionable as being indefinite; the jury could not understand it to mean anything else than the appearance of danger to the plaintiff as seen by the motorman.

5. ———: ———: **Stopping Car.** In the absence of evidence to show within what time and space a car could be stopped, it was error to require the jury by instruction to find such fact.

6. ———: **Contributory Negligence: Harmless Error.** In an action for personal injuries received by collision with a street car, where the defendant pleaded contributory negligence on the part of the plaintiff, but offered no instruction defining contributory negligence, it is presumed to have abandoned that defense, and instructions for plaintiff qualified by references to plaintiff's contributory negligence "as defined in other instructions" was harmless error.

7. **NEGLIGENCE: Verdict: Concurring in Specific Acts.** In an action for personal injuries where several specific acts of negligence are alleged on the part of the defendant as the cause of the injury, it is not necessary for the jury to concur in finding the defendant guilty of any specific act of negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED AND REMANDED.

*Geo. W. Easley* with *Boyle, Priest & Lehmann* for appellant.

*Ernest E. Wood* for respondent.

### STATEMENT.

On August 15, 1903 while plaintiff was driving his one-horse wagon north on Fourth street, in the city of St. Louis, his wagon was struck by one of defendant's street cars travelling south on said street. The wagon was overturned and plaintiff was thrown to the ground and severely bruised and injured. The suit is to recover the damages that accrued from the injury.

The petition, after making formal allegations, alleges:

"1. That plaintiff was driving northward in the east track along Broadway, and a car coming up behind him by loud clanging of the gong forced plaintiff to turn his wagon out of the track; that he could not turn to the right because of teams and other obstructions and accordingly turned to the left.

"That plaintiff then saw another car approaching from the opposite direction, that is, moving from north to south, at a rapid rate, and that plaintiff waived his arm at the motorman as a warning to him to stop the car, and that the motorman could easily have seen the said warning if he desired to do so, but negligently disregarding said warning and negligently came down upon said wagon and crashed into the same, without giving plaintiff time to get out of the way.

"2. That the collision was caused by running the car at a negligent, rapid and unlawful rate of speed just prior to the time of the collision.

"3. That the motorman negligently failed to commence to stop said car upon the first appearance of danger to plaintiff.

"4. That said motorman negligently failed to exert himself to the utmost to stop said car after he did commence to stop the same.

"5. That the motorman negligently failed to keep a vigilant watch for persons who might be upon or near the track.

"6. That said motorman negligently failed to heed the warning given by plaintiff.

"7. That said motorman negligently allowed the car to crash into plaintiff's team.

"8. That defendant negligently failed to provide a proper brake, but provided for said car a defective and inferior brake.

"9. That defendant negligently, failed to comply with an ordinance requiring the use of a certain kind of

brake, which contributed to cause the collision, because the motorman was not able to stop in so short a space of time as if another brake had been upon the car.

"10. The negligent violation of an ordinance limiting the speed of the car to eight miles an hour."

The answer was a general denial and a plea of contributory negligence which was put in issue by the reply.

Plaintiff testified as follows.

"As I was driving up Fourth street on the east side of the street there was a car running right behind me ringing a gong, and it was raining at the time. I couldn't make my horse go quick enough to get out of the way, didn't have any intention, either. I looked around to see if there was a chance to get out on the east side of the street; there was a lot of wagons that were delivering there, right where the bridge is there, all around in under the bridge to get out of the rain. So I started to drive by as soon as I seen the car going too fast for me. I looked up the street to see if any car was in front of me coming down. I couldn't see any car coming down on the west side of the street anywhere. So I went over on the west side of the street to leave the other car pass me. As I got over into the track on the west side of the street, all at once I seen the other car coming around the curve up there. I tried to get out, my horse didn't want to go very fast. I started to jerk him and wave my hand at him to make him go. As I done that I seen the car coming down rapidly, and then I threw my voice and hallooed at the motorman. I don't know whether he heard me or not. I think he heard and I tried to get over the track; was trying to get over. I got over, except my hind wheels, to the other side; guess my wagon was too long to get right across; I had to get over on a slant. That was the last I knew when the car struck me. I never knew anything more."

Plaintiff further testified that the south-bound car was running at a speed of fifteen miles per hour, that no bell was rung by the motorman as the car came

around the curve, which was from two hundred to two hundred and fifty feet from where he was, and he did not see at what point the motorman commenced to check the speed of the car. Plaintiff kept on the east track, after hearing the gong of the car behind him, until he had driven eighty-five or ninety feet north and then turned his horse northwest to drive over the south track. In this connection, the following appears in his cross-examination:

"If you had turned out immediately there was plenty of room there on the right-hand side for you to drive your wagon and horse, wasn't there? A. Yes, sir; I had then just a couple of wagons coming up.

"Q. Have you got an idea how far you would have to go to get beyond them on the north-bound track? A. I guess somewhere about ninety or ninety-five feet.

"Q. Ninety or ninety-five feet? A. Before I could get past them wagons.

"Q. Beyond that the right-hand side was clear, wasn't it? A. Yes, sir.

"Q. And the track, north-bound track, was clear, wasn't it? A. I couldn't tell; I don't know.

"Q. You never saw anything in front of you there, did you, on the north-bound track? A. Not that I can recollect; no, sir.

"Q. You don't recollect seeing anything? A. No, sir.

"Q. Now, in the meantime, this car behind you kept coming closer and closer? A. Yes, sir; it came pretty close to me.

"Q. And they kept sounding the bell. You were driving slowly, were you not? A. I wasn't driving very slow; the moment the gong rang I hurried up to get out of the track. I got out as fast as I could."

Plaintiff's evidence was corroborated in the main by witnesses introduced by him. These witnesses all testified that the car bell was not rung, that the motorman did not begin to check the speed of the car until

it was within about fifteen feet of the plaintiff's wagon and that the wagon was seen, or could have been seen, by the motorman from one hundred and fifty to two hundred feet north of the point where the collision took place. They also testified that the car was running at a rapid rate of speed.

The evidence shows that it was a rainy day, the tracks wet, and the grade of the street descending toward the south.

Plaintiff read in evidence a subdivision of city ordinance No. 1760, which provides that no car shall be driven at a rate of speed exceeding ten miles per hour, and an ordinance showing that the St. Louis Transit Company agreed to accept and comply with all the terms and conditions of ordinances of the city relating to street railways. Defendant's evidence shows that the north-bound car, travelling behind plaintiff's wagon, was moving very slowly and was fully under the control of the motorman; that plaintiff had a large umbrella over him and as he turned out of the east track to drive across the west one, the south-bound car was only two car lengths from him and so close that the car could not be stopped in time to prevent the collision, and the evidence also shows that the car could have been seen by plaintiff a distance of from one hundred and fifty to two hundred feet north of him; that by measurement, the evidence shows that the distance from the outside rail of either track to the curb of the street was eighteen feet and that there was nothing at any time to prevent plaintiff from turning east to drive off the east track. It further shows that the south-bound car was not travelling at a speed exceeding ten miles per hour, that the bell was rung and that the motorman did all in his power to stop the car and avoid a collision as soon as he discovered that plaintiff had turned his horse with the intention of driving across the west track.

Defendant read in evidence the following city ordinances:

"Sec. 1775. *Vehicles—when entitled to use of track.* Vehicles driving in the direction of the cars upon any street railway shall be entitled to the track used by the cars running in that direction.

"Sec. 1776. *Vehicles—when not entitled to use of track.* No vehicle driving in a contrary direction shall use such track except for the purpose of crossing or avoiding other vehicles that may be in the way; and any driver violating the provisions of this section shall be deemed guilty of misdemeanor and on conviction thereof be fined not less than five dollars."

At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered an instruction that under the law and the evidence plaintiff could not recover. This instruction was refused and the jury, under the instructions given by the court, found the issues for plaintiff and assessed his damages at six hundred and fifty dollars.

BLAND, P. J. (after stating the facts).—1. We think the plaintiff's evidence tends to prove some of the specific acts of negligence charged in the petition and that the case was one for the jury, unless plaintiff, by his own evidence, convicts himself of negligence that contributed to his injury. In Gettys v. Transit Co., 103 Mo. 564, 78 S. W. 82, the plaintiff deliberately and advisedly placed herself in a position which made a collision with a street car imminent and retained that position until a collision took place, without making any effort to shun it. It was held that in these circumstances plaintiff could not recover, on the ground that the motorman in charge of the colliding car was guilty of negligence in failing to observe the vigilant watch ordinance, for the reason plaintiff's contributory negligence barred a recovery. In Moore v. Railroad, 176 Mo. 528, 75 S. W. 672, and Zumalt v. Railroad, 175 Mo. 288,

74 S. W. 1015, it was held that contributory negligence in a personal injury case, where it is proven, is a bar to plaintiff's recovery.      This has always been the law in this State and has never been departed from, save in a few exceptional cases where the defense of contributory negligence was seemingly overlooked.      If plaintiff, by driving on the west track, was guilty of negligence, he can not recover, for undoubtedly turning off the east track and driving on the west one contributed to his injury.      He testified that he did not see the car until it was close upon him, too close for him to drive off the track in time to avoid the collision.      The evidence shows that there was a curve in the street from one hundred and fifty to two hundred feet north of the point of collision that prevented a car north of or in the curve from being seen by plaintiff.      The plaintiff's evidence shows that before turning to the west, he looked north to see if a car was coming over the west track and that none was in sight.      He could see as far as the curve and on account of the car in his rear, to use his own language, "coming too fast for him," he turned to the west to get out of the way of the north-bound car.      Plaintiff's witnesses, who were on the ground and saw the accident, testified that the south-bound car did not come in view until it was within one hundred and fifty feet of plaintiff and not until after plaintiff was turning on the west track.      Plaintiff's evidence shows that if he had driven ten to fifteen feet farther on the north track, he would have passed the line of wagons standing on the east side of the track and could then have turned to the east and driven off the track in perfect safety.      For the reason he did not choose this way to get off the track, it is contended he was guilty of negligence.      Negligence is the omission to exercise such care as an ordinarily prudent man would exercise in the same or like circumstances.      To choose, under all circumstances, the safer of two courses of action is not expected nor required of any one.      If two alternative courses requiring prompt

choice and action are put before a man and either appears to be reasonably safe, if he chooses the one that turns out to be less safe than the other, he is not to be convicted of negligence for choosing the course which proved, by subsequent events, to be less safe than the other. Plaintiff's situation, according to his evidence, was about this: wagons on the east prevented him from turning in that direction; a south-bound car and one or two wagons on the west track were passing him and he could not turn in that direction until they had passed on south of him; the car in his rear had gained on him until it was very close to the rear end of his wagon, and the motorman was vigorously sounding the gong to warn plaintiff to drive off the track; the first opening affording him an opportunity to drive off was when the car and the wagons travelling south had passed him; looking up the west track, along which he could see a distance of from one hundred and fifty to two hundred feet, and seeing no car on the west track, he availed himself of this, the first opportunity to get off the east track by turning west, a way that appeared to him to be reasonably safe. We do not think, in these circumstances, plaintiff ought to be convicted of negligence as a matter of law, for the reason he might have avoided the possibility of a collision with the south-bound car while continuing to drive ten or fifteen feet farther north in the east track.

2. Defendant assigns as error the giving of the following instructions for plaintiff:

"1. The court instructs the jury that if they believe from all the evidence that the agents or servants of the defendant company at the time of the injuries to plaintiff, carelessly and negligently ran said car upon plaintiff's team, and that, by the exercise of ordinary care, they could have avoided doing so, and that such negligence was the cause of the injuries to plaintiff, they should find for the plaintiff, unless you find from the evidence that plaintiff himself was guilty of neg-

ligence which directly contributed to his injury, as explained in other instructions.

"2. The court instructs the jury that if they believe from the evidence that plaintiff was driving on Fourth street of the city of St. Louis, on the fifteenth day of August, 1903, and that while he was crossing the tracks of the defendant plaintiff's vehicle was struck by a car operated by the defendant as the direct result of the failure of the agents of the defendant to use ordinary care in stopping the said car upon the first appearance of danger to the said plaintiff, whereby plaintiff was injured, then they should find in favor of the plaintiff, and against the defendant, unless the plaintiff was guilty of negligence which directly contributed to his injury, as explained in other instructions."

The contention is that the instruction did not submit to the jury either one of the ten specific allegations of negligence contained in the petition. The petition averred ten specific acts of negligence. The instruction was not confined to any one or all of the acts alleged, but stepped outside the allegations of the petition and allowed the jury to find for plaintiff, if they found from the evidence that defendant was negligent in any matter whatever. This was palpable error. [Allen v. St. Louis Transit Company, — Mo. App. —, 81 S. W. 1142; Sommers v. St. Louis Transit Company, 108 Mo. App. 319, 83 S. W. 268, decided at this term.]

3. It is alleged in the petition that plaintiff saw the car coming from the north *as* he turned off the east track. Defendant contends that the term "as" as used in this connection, signifies that plaintiff saw the car coming from the north at the moment he turned to drive across the west track, and that he is conclusively bound by this allegation and is convicted of contributory negligence by his pleadings, and that his evidence, that he looked and did not see the car, should be rejected as it contradicts his petition. The term "as," as used in the petition, means "when" (Finance Co. v. Anderson, 106

Iowa 429), and does not signify that plaintiff saw the car at the moment he turned to drive across the track, but that he saw it when—at some time—while he was driving across the track,

4. The objection to the second instruction is that it is based solely on the failure of the motorman to use ordinary care in stopping the car upon the first appearance of danger to plaintiff. The defendant's counsel makes the inquiry, "To whom does this appearance of danger apply, to the plaintiff or to the motorman?" It seems to us this is an unwarranted criticism. The motorman would not be expected to act upon what appeared to the plaintiff (uncommunicated to the motorman) but on what appeared to himself. The appearance referred to in the instruction was the appearance of danger to the plaintiff, as seen by the motorman, and the jury could not have understood the instruction to mean anything else. Nor does the instruction leave the matter open for conjecture, but mentions a definite fact upon which the motorman was required to act and to begin to check the speed of his car when he first saw there was danger of its colliding with plaintiff's wagon, if the car was allowed to speed on unchecked. Nor is the instruction objectionable, as contended by defendant, because the motorman neglected this duty. The instruction is objectionable in this, there was no evidence whatever offered to show within what time and space the south-bound car could have been stopped, yet the jury was required by the instruction to find these facts.

5. As qualifying several of the plaintiff's instructions, the court made reference to plaintiff's contributory negligence as defined in other instructions. No instruction was given defining contributory negligence. For this reason defendant insists that the judgment should be reversed. Contributory negligence was pleaded by defendant as an affirmative defense. The burden was on defendant to prove this defense and if it desired

to have contributory negligence defined to the jury it should have asked an appropriate instruction; having asked none, it is presumed to have abandoned that defense; and as that defense was not submitted to the jury, the clauses in plaintiff's instructions referring the jury to an instruction defining contributory negligennce, which was not given, should be regarded as mere surplusage and as harmless error.

On the oral argument much stress was laid by defendant's counsel on sections 1775 and 1776, of the ordinance offered in evidence by defendant, and it was strenuously insisted that plaintiff had violated section 1776 by turning off of the east track on to the west one and driving north thereon in a direction opposite to the one in which the cars were running. We have failed to discover any such evidence in the record. Plaintiff's evidence shows that he turned his team to the west and drove "catacornered" across the west track, not north on it; and the defendant's evidence is that he turned and was driving across, not along, the track when struck by the car.

6.   The defendant asked but the court refused, the following instruction:

"Before the plaintiff can recover in this action, it is not only necessary that nine or more of your number shall agree to find in his favor, but it is also necessary that the nine or more of you so agreeing shall all concur in finding the existence of at least one of the specific grounds of negligence submitted for your determination."

A like instruction was asked in the case of Holden v. Railroad, 108 Mo. App. 665, 84 S. W. 133, decided at this term, in which we held it was not error to refuse an instruction like this one. We adhere to that opinion.

For error in instructions for plaintiff, the judgment is reversed and the cause remanded. All concur. *Goode, J.,* in the result.