The McLean County Coal Company, Appellant, *vs.* The City of Bloomington, Appellee.

*Opinion filed April 23, 1908.*

1. Contracts—*court will endeavor to place itself in position of parties in construing contract.* In construing a written contract the court will endeavor to place itself in the position of the contracting parties that it may understand the language used in the sense intended, and if there are doubtful terms upon which the parties have, by their conduct, placed a practical construction, the court will adopt such construction.

2. Same—*greater regard must be given clear intent than the particular words used.* In construing a written contract greater regard must be given the clear intent of the parties than any particular words, and such intent is to be gathered from the whole contract, whether it is written upon one piece of paper or several.

3. Same—*connection in which words are used must be considered.* While the words used will usually be given their ordinary meaning in construing a contract, yet the connection in which they are used must also be considered in determining their meaning.

4. Same—*the words "order" and "direct" are sometimes used as synonymous with word "require."* The words "order" and "direct" are sometimes used as synonymous with the word "require" and the word "require" is frequently used as substantially equivalent to "need."

5. Same—*a contract for coal construed as not permitting purchaser to order entire supply at once.* A contract whereby a coal mine agrees to supply coal to a city for one year, payments to be made monthly on itemized bills and the coal to be delivered "promptly as ordered," "as needed," "as fast as is required," and "at such times and in such quantities" as the city may direct, does not authorize the city to order at one time all the coal it would

need for the year, but it may order a reasonable amount in advance of its immediate needs and requirements.

6. SAME—*provision of coal contract construed.* Where a contract between a coal mine and a city provides that the mine shall deliver coal for a year in such quantities as may be needed and required, but need not make deliveries if the operation of the mine is prevented by strikes or unavoidable accident, a provision that the mine shall furnish coal as long as it has coal for sale of the kind and quality described, means that if it had such coal on hand it would be required to supply the present needs of the city, even if operation of the mine was prevented by strike or accident.

7. SAME—*purchaser can order only a reasonable supply in advance of present needs.* Under a contract whereby a coal mine agrees to furnish coal to a city for a year at such times and in such quantities as the city may "need," "require," "order" or "direct," the city may, in anticipation of a threatened strike at the mine, order a reasonable supply in advance of its immediate needs, but it is not justified in buying in the open market upon the refusal of the mine to fill further orders, where the mine had already delivered coal enough to supply the city's needs for two months beyond the date of the refusal.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding.

Appellant sued appellee in assumpsit to recover $1060.33, the contract price of coal sold and delivered during the month of March, 1906. The general issue was pleaded by appellee and notice given of a special defense, consisting of a set-off growing out of the failure of appellant to deliver coal promptly, as ordered, during the said month of March. On account of this failure to deliver said coal appellee purchased about 500 tons in the open market, for which it was obliged to pay $578.32 in excess of the price stated in the contract. A jury was waived and on a trial by the court appellee's set-off was allowed and judgment was entered in favor of the appellant for $482.01. This judgment was affirmed in the Appellate Court, and an appeal was thereupon prayed to this court.

The contract in question was executed June 1, 1905, the provisions essential to the case at bar being substantially as follows: After reciting, among other things, the acceptance of the bid of the second party and the giving of a bond for faithful performance, the contract continues: "Which bond, together with the bids and the request for bids, are hereto attached and by reference thereto made a part of this contract. The said second party agrees to supply said first party for all of its departments and for whatever other coal it may agree to supply at its expense either for charitable purposes or other purposes, third vein screened lump coal as follows: (Then follow the prices and the various places in the city where the coal is to be delivered.) Said second party further agrees that coal of the kind and quality specified herein shall be delivered promptly as ordered, and that upon failure to make deliveries as ordered, the said city of Bloomington shall have the right either to forfeit this contract or go into open market and buy coal for its use at the current market price, and the said McLean County Coal Company agrees to pay the said city of Bloomington, in case said city of Bloomington purchase coal in the open market, the entire excess of cost of such coal over and above the contract price herein specified. It is further agreed that this contract shall hold good for one year from the first of July, 1905, and that said second party during the time of any strike at its mine shall not be required to deliver coal as herein specified, provided said strike prevents the operation of the mine. Neither shall the said second party be required to deliver coal under this contract in case of unavoidable accident which may prevent the operation of the mine, it being the sense of this contract that so long as the said second party has coal of the kind and quality described herein for sale, or so long as its mine may be in operation during the continuance of this contract, the said second party shall furnish the coal herein required of it. Said first party agrees to pay said second party for said coal the

price herein specified upon itemized monthly bills, to be pre-
sented to the city council of the city of Bloomington at the
first meeting after which said bills may have been examined
and approved by the departments ordering the coal in said
bills described, said second party to make out bills for each
department ordering coal, separately. The amount of coal
ordered by said city in any one month shall not be lumped
in any one bill."

The request for bids was dated May 8, 1905, and asked
that sealed proposals for furnishing coal to said city for the
fiscal year ending April 30, 1906, be delivered at designated
places "as needed, * * * and at all other places in the
city where the city may desire to deliver coal, said coal to
be of the best quality and to be delivered as fast as is re-
quired. * * * The quantity required will be 3000 tons,
more or less." The bid of appellant was dated May 19,
1905, and stated that it offered coal for the city for the
year ending April 1, 1906, at certain prices, and "all coal
to be * * * delivered at such times and in such quanti-
ties as you may direct."

The case was heard upon a stipulation of facts, being,
so far as affects this issue, substantially as follows: That
there were rumors of a strike forty-five days prior to April
1, 1906, and that the strike was called three days before
April 1, to take effect, as it did, on this last named date;
that the strike was called off June 1 and the mine resumed
operations; that during the month of February, 1906, ap-
pellee ordered and appellant delivered 890 tons of coal;
that during the following month of March it ordered and
appellant delivered 562 tons but failed to deliver all the
coal ordered by appellee; that it delivered no coal after
March 24 until June 1, 1906; that during March, after fail-
ure of appellant to deliver all the coal ordered, said appellee
purchased 500 tons in the open market at the current market
price; that from June 1, 1906, until the expiration of the
contract, July 1, 1906, coal was delivered as ordered, under

said contract, and accepted and paid for; that appellee had on hand at the water-works on April 1, 1906, 900 tons of the coal delivered by appellant in addition to said 500 tons that it had bought of other parties in the open market, and that on June 1, 1906, it still had remaining unused of said coal 600 tons.

Spencer Ewing, (James S. Ewing, of counsel,) for appellant:

In a contract "to deliver coal when required, in car lots, between September 1, 1895, and September 1, 1896," the word "required," as so used, has the same meaning as the word "needed." The amount of coal which was required between the dates mentioned was the amount of coal which was "needed" in the business of the purchaser for that period. *Purcell Co.* v. *Sage,* 200 Ill. 342.

A contract to deliver coal according to "requirements" means the amount or quantity of coal which the purchaser would need in its business for the specified season. *Lumber Co.* v. *Coal Co.* 160 Ill. 85.

A contract to sell to a party its "requirements" in stove bolts from date to January 1, 1901, means a contract to sell to the purchaser what would be needed in the regular course of his business, and not merely what he might choose to order. *Russell* v. *Stove Co.* 120 Ill. App. 23.

A contract, to be binding and legal, must be certain and must possess mutuality of engagement. Parsons on Contracts, (3d ed.) 374.

When the terms of a contract are susceptible of two significations, that will be adopted which gives operation to the contract rather than that which renders it inoperative. A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. *Lumber Co.* v. *Coal Co.* 160 Ill. 85.

The contract involved in this case is not a contract under which specific performance could be had, and a substantial compliance with its terms is sufficient. 7 Cyc. 146.

Evidence as to the delivery of ·coal between the same parties under a similar contract during the preceding year is admissible in determining the intention of the parties as to the contract, and the manner in which they have acted under similar contracts should be considered. *Jamieson* v. *Wallace*, 167 Ill. 388; *Carroll* v. *Drury*, 170 id. 571.

Louis FitzHenry, City Attorney, for appellee:

The verb "ordered," in a contract, is to be given its ordinary significance as defined by the standard authorities of language, and necessarily involves the exercise of a discretion. *Canning Co.* v. *Can Co.* 94 Ill. App. 62.

Where a coal company agrees to deliver coal "as ordered," except "during the time of any strike at its mine, * * * provided said strike prevents the operation of the mine," or during the time that it is inoperative on account of inevitable accident, it is absolved from liability to fulfill its obligations occasioned by the causes named, and none other. *Coal Co.* v. *Smelting Co.* 36 Ill. App. 38.

Under a contract to furnish certain kinds of coal at a fixed price for a particular purpose, if the contractor fails to furnish the coal and the buyer is obliged to buy elsewhere a more expensive article at a higher rate, he may recover the difference in price as damages. *Coal Co.* v. *Smelting Co.* 53 Ill. App. 565.

This contract gave to the officers of appellee a right to exercise a discretion as to deliveries. If they exercised that discretion reasonably, appellant is liable for the penalty stipulated for a breach,—the excess of the price paid in the market above the contract price. . 14 Cyc. 382.

Performance by the promisee, on demand of the promisor, if the contract lacks mutuality, makes it binding on the latter. *Harvester Co.* v. *Starver Co.* 89 Fed. Rep. 173.

The contract in question recited the acceptance of appellant's bid by the city council to furnish coal for the fiscal year. If this was not sufficient to avoid the alleged lack of mutuality, yet if appellee performed its part of the contract as fully as though it were required by the contract then appellant is bound. This contract has been fully executed acording to the intention of the parties. 1 Parsons on Contracts, (9th ed.) 451; *Plumb* v. *Campbell*, 129 Ill. 101.

Mr. Justice Carter delivered the opinion of the court:

The stipulation of facts shows that from the date of the contract coal was delivered every month up to and including March, 1906; that the amount delivered in February, 1906, was substantially a third again as much as was delivered in any other month and double the amount delivered during several of said previous months; that the amount delivered from March 1 to 24, 1906, inclusive, was nearly as great as any previous month, with the exception of February, and that there had been delivered under the contract, up to March 24, 1906, 6543 tons.

In construing a written contract the court will endeavor to place itself in the position of the contracting parties, so that it may understand the language used in the sense intended by the persons using it. (*Field* v. *Leiter*, 118 Ill. 17.) When the terms of a written agreement are in any respect uncertain or doubtful and the persons by their own conduct have placed a construction upon them which is reasonable, such construction will be adopted by the court, and therefore evidence of acts showing the practical construction of the instrument by the parties themselves is admissible. (*Carroll* v. *Drury*, 170 Ill. 571; *Burgess* v. *Badger*, 124 id. 288; *People* v. *Murphy*, 119 id. 159.) It is contended by appellant in this connection that it furnished appellee coal to April 30, 1905, under a contract similar to the one here in question. There is no evidence in the record upholding this contention, except that in the stipulation of facts there

is an exhibit which apparently shows that 4878 tons of coal were delivered in 1904 and 1905 in practically average monthly installments, and we think it a fair inference, although the record does not show that fact clearly, that it was delivered by appellant to appellee. The terms of the contract under which such delivery was made were not offered in evidence, and we think that appellee's contention must be upheld that the contract as to coal for the previous year cannot be considered in the present state of the record.

The rule is elementary that in the construction of a contract it must be found from the contract itself, if that can be done, what the true intention of the parties was at the time they entered into it, and in doing this every part of the contract must be considered and given effect, if possible. No part will be rejected unless it is necessary so to do in order to prevent a defeat of the purposes sought by the parties to the contract. (*Mittel* v. *Karl*, 133 Ill. 65; *Riggin* v. *Love*, 72 id. 553; *City of Alton* v. *Illinois Transportation Co.* 12 id. 38; Bishop on Contracts,—1887 ed.—sec. 384.) In construing a written instrument the great object is to arrive at the intention of the parties. (*Peoria and Pekin Union Railway Co.* v. *Tamplin*, 156 Ill. 285.) The entire instrument, whether on one piece of paper or on several, and all writings on the same subject, when referred to and made a part of said contract, should be considered in interpreting each particular part. (Bishop on Contracts,—1887 ed.—sec. 382; *Sexton* v. *City of Chicago*, 107 Ill. 323.) The request or advertisement for bids, as well as the bid itself, is specifically made a part of the contract now under consideration. The request for bids asked for coal to be delivered "as needed," and again, "as fast as is required." The bid offers to deliver "at such times and in such quantities as you may direct." The body of the contract itself states in one place that the coal "shall be delivered promptly as ordered," and in another, that upon failure "to make deliveries as ordered," etc. It further provides that said sec-

234—7

ond party, during any time of strike at its mine, "shall not be required to deliver coal as herein specified;" and again, that the second party, so long as the mine is in operation during the continuance of the contract, shall "furnish the coal herein required of it." It is necessary, in order to find the true intent of this contract, to give some meaning to all of these various words and phrases just quoted.

Propositions of law fairly raising the questions urged by counsel for appellant as to the proper construction of the contract were presented and refused by the trial court.

Appellee contends that the construction to be placed upon this contract is, in effect, that the city could order all the coal it would need for its use during the life of the contract at any time it desired, and that appellant would be compelled to deliver it if such coal was on hand at the time so ordered. If this contention be upheld, then appellee, during the first month after the contract was entered into, could have ordered all the coal that in the judgment of its officials it would need up to July 1, 1906, and appellee would have been compelled to deliver such coal if it had it in stock. Manifestly, this was not the intention of the parties when they entered into the contract. Such a construction would render nugatory the provision made to cover the possibility of the said second party being unable to operate its mine through unavoidable accidents or strikes. Obviously, from the very wording of the contract the parties understood that the coal would be delivered and paid for on monthly itemized bills. If the coal was to be delivered at once, it certainly cannot be contended that the payments would have to be divided into monthly payments. Moreover, such a construction would leave the words "as needed" and "as fast as is required," which appear in the request for bids, absolutely without any meaning, or give them the identical meaning that appellee now contends should be placed upon the word "ordered." The words "order" and "direct" are sometimes used as synonymous with the word "require,"

(*United States* v. *Dimmick,* 112 Fed. Rep. 350,) and the word "require" is frequently used as being substantially equivalent to "need." (*Minnesota Lumber Co.* v. *Coal Co.* 160 Ill. 85; *Purcell Co.* v. *Sage,* 200 id. 342; 24 Am. & Eng. Ency. of Law,—2d ed.—601, and cases cited.) It is a familiar rule that words should usually be given their ordinary meaning, but it is also well settled that the connection in which they are used must be considered in order to determine their meaning in any given contract. Manifestly, if this contract be given a reasonable construction, the appellant was to deliver the coal when ordered, at such times, quantities and places as the city required and needed it and directed that it should be delivered.

The provision that it was the "sense of this contract that so long as the said second party has coal of the kind and quality described herein for sale * * * said second party shall furnish the coal herein required of it," is relied upon by appellee, because the record shows that at the time the coal was ordered in the last week of March, 1906, appellant had coal of the kind and quality on hand. We think the provision just quoted, fairly construed, means that even though appellant was prevented from operating the mine by unavoidable accident or by strike, still, if it had any coal on hand of the kind and quality specified, it would be compelled to deliver this coal notwithstanding the mine was shut down, to supply the then present needs and requirements of the appellee.

Greater regard must be had to the clear intent of the contract than any particular words used therein. (*Torrence* v. *Shedd,* 156 Ill. 194.) The intention of the parties in making this contract plainly authorized appellee to order coal as required or needed by its various departments, but it would not be a reasonable construction to say that, in anticipation of a strike, during the first month of the contract it could order at once all the coal which it had the right to order during the whole life of the contract. While a certain

amount of discretion, under this contract, rested with appellee as to the amount it might order at any given time, this discretion must be reasonably exercised. What constitutes such reasonable discretion? Taking into consideration the words "ordered," "directed," "required" and "needed," as used in their various connections in the request, bid and contract, we think it would not be an unreasonable construction to say that the discretion rested with appellee to order coal at least a month in advance. Would it be a reasonable discretion for it to order six months in advance? And if not for six months, could it for three months? It is apparent from this record that the appellee, in anticipation of a strike, ordered coal during the months of February and March, 1906, in excess of its then present requirements. The appellant did not refuse to deliver coal as ordered until after March 24, 1906. At that date it had already delivered to appellee sufficient for its uses for over two months beyond the date of such refusal. Construing the contract in its entirety and in the most favorable light for appellee, and taking into consideration the previous deliveries of coal from month to month and payments therefor under monthly itemized bills, we do not think that, fairly construed, it would justify appellee in ordering coal for more than two months in advance of its then present needs and requirements. The amount claimed as a set-off by appellee should not have been allowed. The circuit court, on the record before us, should have entered judgment in favor of appellant for $1060.33.

The judgments of the circuit and Appellate Courts will therefore be reversed and the cause remanded to the circuit court for further proceedings in harmony with the views herein expressed.                    *Reversed and remanded.*