EDGAR A. LEVY LEASING COMPANY, INC. *v.* SIEGEL.

810 WEST END AVENUE, INC. *v.* STERN.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

Nos. 285 and 287. Argued January 24, 25, 1922.—Decided March 20, 1922.

1. Chapters 942 and 947 of the New York Housing Laws, which suspend the landlord's right of action to recover possession from his tenant, except under specified conditions, and c. 944, providing that, in an action for rent under an agreement for premises occupied for dwelling purposes it shall be a defense that the rent is unjust and unreasonable and the agreement oppressive, but permitting the landlord to plead, prove and recover a fair and reasonable rent, are constitutional. P. 245. *Marcus Brown Holding Co. v. Feldman,* 256 U. S. 170.

2. The obligation to pay specified rent can not be said to be impaired by a limitation on the recovery to what is fair and reasonable, made by a statute existing when the lease was made and carried into a subsequent statute. P. 248.

3. A statute making it a defense in an action for rent that the rent agreed is unjust and unreasonable and the agreement oppressive, provides a standard sufficiently definite to satisfy the due process clause of the Constitution. P. 249. *United States v. Cohen Grocery Co.,* 255 U. S. 81, distinguished.

194 App. Div. 482, 521; 230 N. Y. 634, 652, affirmed.

ERROR to two judgments entered in the Supreme Court of New York pursuant to remittiturs from the Court of Appeals and dismissing actions brought by the present plaintiffs in error, in the first case to recover rent under a lease and in the second to eject a tenant holding over after the expiration of his lease. The premises leased were apartments in New York City. In both cases there were appeals in the first instance to the Appellate Division, and thence to the Court of Appeals. A summary of the New York Housing Laws, the provisions of which as

applied in favor of the tenants were questioned on consti-
tutional grounds, will be found in a note to the report of
*Marcus Brown Holding Co.* v. *Feldman,* 256 U. S. 170.

Mr. *Louis Marshall,* with whom Mr. *Lewis M. Isaacs*
was on the briefs, for plaintiffs in error.

Mr. *William D. Guthrie* and Mr. *Julius Henry Cohen,*
with whom Mr. *Elmer G. Sammis* and Mr. *Bernard
Hershkopf* were on the briefs, for the Joint Legislative
Committee on Housing of the New York Legislature.

Mr. *Raymond L. Wise,* Mr. *David L. Podell,* Mr. *Mar-
tin C. Ansorge,* Mr. *Benjamin S. Kirsh* and Mr. *J. J.
Podell* filed a brief on behalf of the defendant in error
in No. 287.

MR. JUSTICE CLARKE delivered the opinion of the court.

These two cases were argued and will be disposed of
together.

A motion to dismiss or affirm was filed in each case, on
the ground that each is ruled by the decision in *Marcus
Brown Holding Co.* v. *Feldman,* 256 U. S. 170, and both
were postponed to the hearing on the merits.

The essential question presented for decision in the
*Marcus Brown Case* was, and in these cases is, the con-
stitutional validity of the Emergency Housing Laws of
the State of New York, approved by the Governor Sep-
tember 27, 1920, cc. 942 to 953, inclusive, Laws of New
York, 1920.

By these acts a number of changes were made in the
substantive law, and a number of amendments to reme-
dial statutes of the State, for the purpose of securing to
tenants in possession of houses or apartments, occupied
for dwelling purposes, in described cities, the legal right
to continue in possession until November 1, 1922, by the
payment, or securing the payment, of a reasonable rental,
to be determined by the courts, and for the purpose also

of encouraging the building of dwellings by providing under specified conditions for their exemption from local taxation.

In No. 285 it is alleged: That a described apartment was leased to the defendant from October 1, 1918, to October 1, 1920, at the stipulated rental of $1,450 per annum, payable in equal monthly installments in advance; that while in possession under that lease, in May, 1920, the defendant executed a new lease for two years, beginning on the expiration of the former one on October 1, 1920, at a rental increased to $2,160, payable in equal monthly installments in advance; and that he refuses to pay the installment due on October 1, 1920. Judgment for the one month's rent is prayed for.

The defendant admits the execution of the leases, as stated in the complaint, but avers that the second one was signed under the coercion and duress of threats of eviction and that the rent stipulated for is " unjust, unreasonable and oppressive." He offers to pay the same amount of rent as was paid for the preceding month and asserts the right to continue in possession under the emergency acts. A motion for judgment on the pleadings presented the question of the constitutionality of c. 944 of the Emergency Housing Laws and the state courts all held the chapter a constitutional and valid exercise of the police power.

In No. 287 it is averred: That the defendant is a tenant holding over after expiration of his lease; that he refuses to surrender possession as he stipulated in his lease to do, and that he claims the right to retain possession under cc. 942 and 947 of the Emergency Housing Laws, which suspend the right of action to recover possession except under specified conditions, which are not applicable. A general demurrer to this complaint presented the question of the constitutionality of cc. 942 and 947 of the laws assailed and the state courts all sustained them as valid.

In terms the acts involved are " emergency " statutes and, designed as they were by the legislature to promote the health, morality, comfort and peace of the people of the State, they are obviously a resort to the police power to promote the public welfare. They are a consistent inter-related group of acts essential to accomplish their professed purposes.

The warrant for this legislative resort to the police power was the conviction on the part of the state legislators that there existed in the larger cities of the State a social emergency, caused by an insufficient supply of dwelling houses and apartments, so grave that it constituted a serious menace to the health, morality, comfort, and even to the peace of a large part of the people of the State. That such an emergency, if it really existed, would sustain a resort, otherwise valid, to the police power for the purpose of dealing with it cannot be doubted, for, unless relieved, the public welfare would suffer in respects which constitute the primary and undisputed, as well as the most usual, basis and justification for exercise of that power.

In the enactment of these laws the Legislature of New York did not depend on the knowledge which its members had of the existence of the crisis relied upon. In January, 1919, almost two years before the laws complained of were enacted, the Governor of the State appointed a " Reconstruction Commission " and about the same time the Legislature appointed a committee known as the " Joint Legislative Committee on Housing," to investigate and report upon housing conditions in the cities of the State, and a few months later the Mayor of New York appointed a similar committee. The membership of these committees comprised many men and women representative of the best intelligence, character and public service in the State and Nation, their investigations were elaborate and thorough and in their reports, placed before the Legisla-

ture, all agree: that there was a very great shortage in
dwelling house accommodations in the cities of the State
to which the acts apply; that this condition was causing
widespread distress; that extortion in most oppressive
forms was flagrant in rent profiteering; that, for the pur-
pose of increasing rents, legal process was being abused
and eviction was being resorted to as never before; and
that unreasonable and extortionate increases of rent had
frequently resulted in two or more families being obliged
to occupy an apartment adequate only for one family,
with a consequent overcrowding, which was resulting in
insanitary conditions, disease, immorality, discomfort and
widespread social discontent.

If this court were disposed, as it is not, to ignore the
notorious fact that a grave social problem has arisen
from the insufficient supply of dwellings in all large cities
of this and other countries, resulting from the cessation
of building activities incident to the war, nevertheless,
these reports and the very great respect which courts must
give to the legislative declaration that an emergency ex-
isted would be amply sufficient to sustain an appropriate
resort to the police power for the purpose of dealing with
it in the public interest.

The argument heard in these cases and further examina-
tion of the subject confirms us in the assumption made in
the *Marcus Brown Case*, 256 U. S. 170, 198, that the
emergency declared existed when the acts were passed.

It is strenuously argued, as it was in *Block* v. *Hirsh*,
256 U. S. 135, and in the *Marcus Brown Case*, that the
relation of landlord and tenant is a private one and is not
so affected by a public interest as to render it subject to
regulation by the exercise of the police power.

It is not necessary to discuss this contention at length,
for so early as 1906, when the Tenement House Act of
New York, enacted in 1901, was assailed as an unconsti-
tutional interference with the right of property in land,

on substantially all of the grounds now urged against the Emergency Housing Laws, this court, in a *per curiam* opinion affirmed a decree of the Court of Appeals of New York (179 N. Y. 325), sustaining regulations requiring large expenditures by landlords as a valid exercise of the police power. *Moeschen v. Tenement House Department,* 203 U. S. 583. To require uncompensated expenditures very certainly affects the right of property in land as definitely, and often as seriously, as regulation of the amount of rent that may be charged for it can do. Many decisions of this court were cited as sufficient to justify the summary disposition there made of the question, as one even then so settled by authority as not to be longer open to discussion.

In the opinion in *Block* v. *Hirsh, supra,* this court cites in support of this same conclusion, under the circumstances there disclosed, which are not to be distinguished from those presented in this case, the later cases following: *Strickley* v. *Highland Boy Gold Mining Co.,* 200 U. S. 527; *Welch* v. *Swasey,* 214 U. S. 91; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531; *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269; *Perleu* v. *North Carolina,* 249 U. S. 510.

These authorities show that from time to time for a generation, as occasion arose, this court has held that there is no such inherent difference in property in land, from that in tangible and intangible personal property, as exempts it from the operation of the police power in appropriate cases, and in both the *Marcus Brown* and *Block Cases, supra,* it was held, in terms, that the existing circumstances clothed the letting of buildings for dwelling purposes with a public interest sufficient to justify restricting property rights in them to the extent provided for in the laws in those cases objected to.

In the opinion in the *Marcus Brown Case* it is said, that the defendant-tenants, holding over after their lease

had expired, relied upon cc. 942 and 947 of the New York Housing Laws and that the landlord challenged their validity. But this court held them valid. We have seen that in No. 287, here under consideration, the defendant-tenant is holding over after the expiration of his lease, and that he justifies under cc. 942 and 947. Thus this No. 287 presents precisely the same questions of fact and law as the *Marcus Brown Case* presented, and must be ruled by it.

No. 285 is a suit against a tenant who, during the term of a lease, which he avers was executed under the coercion and duress of a threat of eviction, refuses to pay the amount of rent stipulated therein, which he alleges is "unjust, unreasonable and oppressive." He offers to pay the same rent that he paid for the next preceding month. Such a case falls within the precise terms of c. 944 of the Emergency Housing Laws, providing that:

"It shall be a defense to an action for rent accruing under an agreement for premises in a city," etc., "occupied for dwelling purposes that such rent is unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive."

Section 4 of this chapter provides that nothing therein contained shall prevent a plaintiff from pleading and proving in such action a fair and reasonable rent for the premises and recovering judgment therefor.

It is contended that the validity of this c. 944 was not directly presented in the *Marcus Brown Case,* and that the impairment of contracts clause of the Constitution was not considered or decided in that case as it must be in this one.

To this there are two answers, either of which is sufficient.

The first is that the defense sustained in this case, by the court below, was provided for by c. 136 of the Laws of New York in effect when the lease involved was exe-

cuted. The provision was simply carried into c. 944 when that chapter was amended in September, 1920, and, of course, a lease made subsequent to the enactment of a statute can not be impaired by it. *Oshkosh Waterworks Co.* v. *Oshkosh,* 187 U. S. 437, 446.

The second answer is that reference to the report of the *Marcus Brown Case* shows that this constitutional objection was urged in the briefs and the court says, in its opinion:

"The chief objections to these acts have been dealt with in *Block* v. *Hirsh.* In the present case more emphasis is laid upon the impairment of the obligation of the contract of the lessees to surrender possession and of the new lease which was to have gone into effect upon October 1, last year. But contracts are made subject to this exercise of the power of the State when otherwise justified, as we have held this to be. *Manigault* v. *Springs,* 199 U. S. 473, 480. *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, 482. *Chicago & Alton R. R. Co.* v. *Tranbarger,* 238 U. S. 67, 76, 77. *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U. S. 372, 375. *Producers Transportation Co.* v. *Railroad Commission of California,* 251 U. S. 228, 232."

Palpably, as to this constitutional objection to c. 944, the prior decision is ruling.

It is also urged that c. 944 is invalid because the provision that, "It shall be a defense to an action [by a landlord] that such rent [demanded] is unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive," is too indefinite a standard to satisfy the due process of law clause of the Constitution.

The report of the *Marcus Brown Case* shows that this contention was urged in briefs by the same counsel presenting it here, and it is apparent that the standard was impliedly approved as valid in that case, as it was very

clearly approved in the *Block Case, supra,* the court say-ing: " While the act is in force there is little to decide except whether the rent allowed is reasonable, and upon that question the courts are given the last word." The standard of the statute is as definite as the "just compen-sation " standard adopted in the Fifth Amendment to the Constitution and therefore ought to be sufficiently definite to satisfy the Constitution. *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, dealing with definitions of crime, is not applicable.

Several other contentions are pressed upon the atten-tion of the court, chiefly with respect to the modifications of the remedial statues, but such as were not specifically dealt with in the *Marcus Brown* and *Block Cases,* im-press us as quite unimportant. Given a constitutional substantive statute, enacted to give effect to a consti-tutional purpose, the States have a wide discretion as to the remedies which may be deemed necessary to achieve such a result and it is very clear that that discretion has not been exceeded in this instance by the State of New York.

It results that the judgments of the state court must be affirmed.

*Affirmed.*

Dissenting: Mr. Justice McKenna, Mr. Justice Van Devanter and Mr. Justice McReynolds.