## WISTER BEASLEY, PLAINTIFF-APPELLANT, v. IRENE R. T. GOTTLIEB, DEFENDANT-RESPONDENT.

Submitted October 5, 1943—Decided December 28, 1943.

Before Justices CASE, DONGES and PORTER.

For the plaintiff-appellant, *Rothbard, Greenstone & Harris* (*Samuel L. Rothbard*).

For the defendant-respondent, *George R. Sommer*.

The opinion of the court was delivered by

CASE, J.    Plaintiff sued in the First District Court of the City of Newark to recover $50 on each of two counts, $100 in all, plus attorney's fees and costs, upon the allegation that

the defendant had demanded and received from the plaintiff the sum of $28 rent for a living apartment for the month of July, 1942, and a like sum for the month of August, 1942, whereas the maximum monthly rental permitted under a regulation established by the Administrator of the Emergency Price Control Act of 1942 was $22—an overcharge on each of the two months of $6. The judge, holding that the suit was to recover a penalty imposed by the federal statute and that his court therefore lacked jurisdiction, dismissed the suit. The pertinent statutes are the New Jersey statute fixing the jurisdiction of District Courts:

*R. S.* 2:8–40: "Every action of a civil nature at law, or to recover any penalty imposed or authorized by any law of this state, where the debt, balance, penalty, damage or other matter in dispute does not exceed, exclusive of costs, the sum or value of five hundred dollars, shall be cognizable in the district courts of this state," and the federal statute setting up the right to sue, being a part of the Emergency Price Control Act of 1942:

50 *U. S. C. A. App.*, § 925 (e): "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action for $50 or treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section, the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying and selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States. Any suit or action under this sub-section may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent paid. The provisions of this subsection shall not take

effect until after the expiration of six months from the date of enactment of this Act."

The decision of the United States Supreme Court in *Huntington* v. *Attrill,* 146 *U. S.* 657; 36 *L. Ed.* 1123, chiefly relied upon by appellant, states that the demarcation between penal actions and civil actions, in the international sense, depends upon whether the purpose is to punish an offense against the public justice of the state or to afford a private remedy to a person injured by the wrongful act and holds that the statute in which that action grounded was remedial and not penal. The New York statute, out of which the litigation arose, made the officers of a corporation who signed and recorded a false certificate of the amount paid in on its capital stock jointly and severally liable for all the debts of the corporation contracted while they were officers thereof. Attrill, as a director of the company, signed and recorded a certificate that the whole capital stock of the corporation, $700,000, had been paid in, whereas, in truth, no part of it had been paid in. The litigation was to enable a creditor to reach personal property of Attrill in Maryland wherewith to satisfy a judgment, in the amount of the corporation debt, obtained in the State of New York. It was held that while the statute was penal as against defaulting trustees, it was remedial in favor of creditors. The reasoning is plain and convincing: the statute enabled persons complying with its provisions to do business as a corporation without being subject to the liability of general partners, but it took pains to secure a proper corporate fund for the payment of corporate debts and therefore made the officers liable, to the extent of those debts, because of their misleading fraud.

*Whitman* v. *Oxford National Bank,* 176 *U. S.* 559; 44 *L. Ed.* 587, and *Chattanooga Foundry and Pipe Works* v. *City of Atlanta,* 203 *U. S.* 390; 51 *L. Ed.* 241, also are cited. The former held that the liability of a stockholder under a statutory provision to contribute towards the debts of the corporation was contractual and that action thereon could be maintained in any court of competent jurisdiction. The holding in the latter case, in so far as pertinent hereto, is not so obvious; but it may be understood to be that a suit by a

city to recover threefold for damage to property under section 7 of the federal act of July 2d, 1890, chapter 647, was not a suit for a penalty under *Rev. Stat.*, § 1047 (*U. S. Comp. Stat.*, 1901, *p.* 727). In *Brady* v. *Daly*, 175 *U. S.* 148; 44 *L. Ed.* 109, an action to recover damages for infringement of copyrights in that unauthorized productions of a copyrighted play were given, it was held that the statutory fixing of minimum damages at $50 for each performance did not set up an action to recover either a penalty or a forfeiture, and the opinion moves upon such reasoning as this:

"In *Chatterton* v. *Cave*, 3 *App. Cas.* 483, 492, the court in speaking of this provision for damages said that the same 'was no doubt fixed because of the difficulty of proving with definiteness what amount of actual damage had been sustained by perhaps a single performance at a provincial theater of a work belonging to a plaintiff, while at the same time his work might be seriously depreciated if he did not establish his right as against all those who infringed upon it.'"

In *Atchison, Topeka and Santa Fe Railway Co.* v. *Nichols*, 264 *U. S.* 348; 68 *L. Ed.* 720, the United States Supreme Court, passing upon the propriety of a suit in California, where allowable damages were a matter of proof, to recover for a death that occurred in New Mexico, where the recovery was statutorily fixed at $5,000, said:

"The contention of petitioner is, as we understand it, not that damages in redress of death are opposed to the policy of California, but only when damages are given in a fixed amount as provided by the law of New Mexico, the Code of Civil Procedure of the State giving such damages only 'as, under all the circumstances of the case may be just;' therefore, confining the damages to compensation for pecuniary loss suffered by surviving relatives of the deceased. This may be conceded—there is nothing in the law of New Mexico that transcends the purpose. It does not preclude the recovery of damages—it only defines them, recognizing, as the Supreme Court of California has recognized, the incapability of precise accuracy being attained either by court or jury of the damages that may result from the death of a person to surviving relatives."

*Overnight Motor Transportation Co.* v. *Missel,* 316 *U. S.* 572; 86 *L. Ed.* 1682, involved the application of the overtime section of the Fair Labor Standards Act, which, in section 16 (b), provided that an employer who violated the act should be liable to the affected employee in the amount of his unpaid wage and in an additional equal amount as liquidated damages, and the court's observation was that such liquidated damages were compensation, not a penalty or punishment by the government—"The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages."

We have briefly reviewed the basic issues in all of the United States Supreme Court decisions cited by appellant on this phase of the controversy, and we deduce that, although the language of the opinions is in some instances more comprehensive, the recovery permitted was in each case limited to the damage of the plaintiff, either the precise amount of the damage as proved or, where the actual damage was problematical or not susceptible of proof, an arbitrary equivalent statutorily fixed. In the instant case the actual damage of the plaintiff is definite and of precise amount; it is the difference between the lawful rental and the amount demanded and received—$6 per month. The amount sued for is $50 per month, between which and the actual damage there is neither proportion nor other relationship. Had the excess rental received by the defendant been a dollar, or fifty cents, or $15 per month, the same statutory recovery, namely, $50 per month, would apply; not until the excess in the amount collected becomes of such size that multiplied by three it is greater than $50 does the statutory recovery depend in any degree upon the actual damage suffered. In that posture the suit has some aspect of imposing a penalty or punishment upon the defendant for her violation of the law; an aspect which is emphasized by the further statutory provision that if the tenant is not entitled to bring the suit the Price Administrator may do so. Obviously, the latter alternative looks toward punishment and not toward reparation; but it should be added that a recovery may be penal as to one party and remedial as to another even under the authority of the

same statute and within the same suit. Also, under the decisions, a statutory recovery may be punitory without being penal; but we apprehend that a recovery allowed by statute to a plaintiff in a private suit may be so far beyond the reparation of damage as to evidence clearly that the real purpose in the enactment is to transfer to the injured individual the function of administering punishment on behalf of society to a violator of the law.

It was said in *Reed* v. *Northfield,* 13 *Pick.* 94, 101, that "the distinction is that it (viz., a penal action) is prosecuted for the purpose of punishment, and to deter others from offending in like manner;" a statement that was quoted with approval in *Huntington* v. *Attrill, supra.* That this objective may not be wholly absent from the legislative purpose in the present statute is suggested not only by the arbitrary recovery but by the following language excerpted by appellant from the Report of the Senate Committee (*S. Rep. No.* 931, *77th Cong., 2d Sess., p.* 9) which conducted the hearings on the Emergency Price Control Act:

"Actions to Recover Damages—Such actions have proved valuable in the enforcement of other regulatory statutes such as the Fair Labor Standards Act, both to relieve the Government of a part of the burden of enforcement and to deter initial violations."

The provision for treble damages at the suit of the aggrieved person does not of itself set up a penal action; the damages in such case are directly related to the actual injury and may be merely punitory. It has long been considered that "where a statute gives accumulative damages to the party grieved, it is not a penal action," *Read* v. *Chelmsford,* 16 *Pick.* 128, 132.

Of course, the federal government is not a sovereignty foreign to this state. The laws of the United States are laws in the several states. "Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights." *Claflin* v. *Houseman,* 3 *Otto* 130; 23 *L. Ed.* 833. The question that confronts us is not whether the statute is law in this state, but whether the District Court, a

court of limited and sharply defined jurisdiction, is competent to entertain the suit. The phrase "every action of a civil nature at law" in the District Court Act, *supra,* does not embrace actions for statutory penalties. Mr. Justice Dixon, writing the opinion for this court in *Koch* v. *Vanderhoof,* 49 *N. J. L.* 619, made it clear that although an action for a penalty is a civil action and ordinarily embraced within a legislative grant of "civil jurisdiction," nevertheless, for the reasons there given, such an action is not embraced within the words "every action of a civil nature" in the District Court Act. The result is that such jurisdiction as the District Courts have by virtue of *R. S.* 2:8–40 over actions for penalties lies in the authority to entertain a suit to recover "any penalty imposed or authorized by any law of this state." A penalty imposed by a federal law, although recoverable in this state, does not thereby become, within the meaning of our statutes, *imposed or authorized* by any law *of this state.* We are of the opinion that a District Court may not, under its statutory authority, entertain a suit to recover a penalty except where the penalty is imposed or authorized by a law of this state. Consequently, if the recovery here sought is of a penalty, the District Courts are not competent since the penalty is not so imposed or authorized.

Is the suit for the recovery of a penalty? Our cases dealing with penalty actions of a civil nature are for the most part *qui tam* actions or of that sort. In *Koch* v. *Vanderhoof, supra,* it was assumed that the legislative mind divided suits into three classes: private suits for private wrongs, private suits for public wrongs, and public suits for public wrongs. The suit in that case was between private parties, brought under a statute which wrote down sums of money for the violation thereof "to be recovered by any person who may sue for the same in any court of competent jurisdiction." The decision placed the action in the second class—a private suit for a public wrong; and characterized it as for a penalty. *Tims* v. *Spragg,* 58 *N. J. L.* 273, was an action brought by a landlord to recover double rent from his tenant for willfully holding over after the end of the term under the provisions of the twenty-seventh section of the Landlord and Tenant

Act, *Gen. Stat., p.* 1921. The same theory of division of suits was adopted and the court, having distinguished the Koch case, held:

"In the case before us, the act provides that the tenant unlawfully holding over shall pay to the landlord 'at the rate of double the yearly value of the lands for so long a time as they are detained.' The right to maintain the suit is in the landlord alone. It is a private suit for a private wrong; its exclusive purpose is to redress the civil injury done by the tenant to the landlord, the measure of damages being fixed by the statute."

Difficulties are presented by the arbitrary recovery in the instant case unrelated to the damage suffered, but we consider that the national crisis with respect to which the authorizing statute was enacted calls for a liberal construction in support of jurisdiction. The District Courts, expeditious, inexpensive, geared to the disposition of relatively minor disputes, are peculiarly fitted to handle litigation of this sort. We are of the thought that Congress in setting up a civil action at the instance of the aggrieved party intended only to create a private suit for a private injury and that the "exclusive purpose is to redress the civil injury" done by the landlord to the tenant. This being so, the reasoning in the Koch and the Tims cases leads to an upholding of the jurisdiction.

We conclude that the suit grows out of the relations of citizens *inter sese,* rather than out of their relations with the government; that the suit is of a civil nature, remedial of a private wrong and therefore not penal, a private suit for a private wrong; that the suit is within the limitations of the statutory jurisdiction of the District Courts; and consequently that the judgment below should be reversed and the record be remanded to the First District Court of the City of Newark for further proceedings consistent with this opinion. Costs to abide the event.