## MOORE v. COATES.

### No. 216.

Municipal Court of Appeals for the District of Columbia.

Nov. 22, 1944.

Rehearing Denied Dec. 19, 1944.

George E. C. Hayes, of Washington, D. C. (Cobb, Howard and Hayes, of Washington, D. C., on the brief), for appellant.

David Wiener, of Washington, D. C., for appellee.

Ernest F. Henry, Gen. Counsel, of Washington, D. C. (James A. Crooks, Asst. Gen. Counsel, of Washington, D. C., on the brief) for Robert F. Cogswell, Administrator of Rent Control for the District of Columbia, of Washington,. D. C., amicus curiae. ·

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

In April, 1942, appellant began operation of a rooming house at 33 M Street, N. W. A schedule of rates charged for eleven individual room units was promptly filed with the Administrator of Rent Control, but no request was made for determination of rent ceilings. Appellee became

a tenant of one room on April 20, 1942, at a rental of $28.17 per month. Her tenancy continued until after April 18, 1944, when the Administrator of Rent Control determined the maximum rent ceiling of the room occupied by her to be $20 per month. She brought this action claiming the amount she had paid in excess of that rate. She obtained judgment for $175.91 and the landlord appealed. The question is the effect of the Administrator's determination on rents paid during the two year period which preceded his action.

The Administrator's determination was evidenced by the following order:

"Upon consideration of the application herein and pertinent data and the proceedings had herein it is this 18th day of April, 1944, ordered, that the minimum service standard for each of the housing accommodations located in the said premises shall include heat, hot water, gas, electricity and necessary janitor service, repairs and maintenance, all at the expense of the proprietor, and it is,

"Further Ordered, that the maximum rent ceiling per unit for each of the rooms located in premises 33 M Street, N. W. based upon the said minimum service standard is hereby determined to be as follows:

*　　*　　*　　*　　*

"Room No. 7................ $20.00
"*　*　*"

Section 2 of the Emergency Rent Control Act for the District of Columbia, Act of Congress of December 2, 1941, 55 Stat. 788, ch. 553, Code 1940, 45—1601 to 1611, provides:

"(1) On and after the thirtieth day following the enactment of this chapter, subject to such adjustments as may be made pursuant to sections 45—1603 and 45—1604, maximum-rent ceilings and minimum-service standards for housing accommodations excluding hotels, in the District of Columbia shall be the following:

"(a) For housing accommodations rented on January 1, 1941, the rent and service to which the landlord and tenant were entitled on that date.

"(b) For housing accommodations not rented on January 1, 1941, but which had been rented within the year ending on that date, the rent and service to which the landlord and tenant were last entitled within such year.

"(c) For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent and service generally prevailing for comparable housing accommodations as determined by the Administrator."

These premises were not rented on January 1, 1941, or during the prior year so that we are concerned with the construction of paragraph (c). The tenant's position is that the Administrator's action is retrospective and is determinative of the precise amount of a theretofore existing maximum ceiling automatically created by the statute; the landlord claims that the maximum ceiling is established by the Administrator's order and is applicable only to future payments of rent.

Although nearly three years have passed since the enactment of the statute we are not advised of any official interpretation of the section and this is the first appeal to come before us in which the present question is involved.

On February 2, 1942, the Administrator issued General Order No. 1 relative to paragraph (c) stating that until further notice the Administrator "will assume—but not concede—that the first rent collected by the landlord for such housing accommodations is fair and reasonable." This order also required that landlords file separate petitions for determination of a maximum rent ceiling for each housing unit. September 30, 1942, this order was superseded by the Administrator's General Order No. 6, providing that, effective November 1, 1942, the maximum rent ceiling on all housing accommodations not rented January 1, 1941, or within the preceding year, for which no application for a determination had been filed and no determination made is "hereby determined to be zero"; but that "Upon the filing of such application and until the Administrator shall act upon the application and determine otherwise, the first rent received since January 1, 1941 shall be the maximum rent ceiling and the services then included shall be the minimum service standard for such housing accommodations." The "zero" provision was held to be invalid by the Municipal Court for the District of Columbia upon the ground that such a determination was not based upon the rent charged for comparable housing accommodations as required by the Act.[1]

---

[1] Van Mechelen v. Block, Mun.Ct.D.C., No. 420,644, decided Sept. 2, 1943. No appeal was taken from this decision.

Following this decision General Order No. 11 was adopted by the Administrator, rescinding General Order No. 6 and requiring that for such housing accommodations then rented an application for determination of a maximum rent ceiling be filed "immediately"; that for housing accommodations not then rented such application be filed "before any future tenancy begins."

These orders, except the quoted portion of No. 6 adopting the first rent charged as the prior ceiling, which rendered actual determination prospective only, shed little if any light upon the present issue. It is now claimed that to hold a determination made under paragraph (c) is prospective only would open the door to profiteering, permitting the landlord to benefit by exacting and retaining an excessive rent during the time which must elapse before a rent ceiling is determined. If this be so, and such profiteering has occurred, paragraph (c) conferred upon the Administrator powers unrestricted by procedural limitations and it is to be regretted that some effective procedure was not devised to prevent interim profiteering before rent ceilings were finally determined.[2]

■ The language of subsection (c) affords little help in determining what was intended by the expression "as determined by the Administrator." Standard dictionaries unite in defining "as" to mean "to the extent," "in the manner" and "when". It may be employed to indicate a combination of time with extent or manner.[3] The language of the section being susceptible of two meanings, we must look to other provisions of the act to ascertain the intent of Congress, and, having in view the limitations imposed by the courts upon legislative enactments of this nature, avoid an interpretation which would render the provision unreasonable or invalid.

■ It is elementary that although the statute is in derogation of private rights of property, an overwhelming necessity requires that it be liberally construed to effect its obvious purpose and afford relief from conditions which would otherwise impede the war effort.[4]

■ If a rent ceiling is automatically created by the statute prior to the determination by the Administrator, an owner is required to determine for himself the rent he may charge and the service he must furnish, and assume responsibility for a violation of the rent ceiling or minimum service standard which, although it may not be wilful, and, therefore, not subject him to the criminal provisions of the act, is expressly declared to be unlawful and makes him liable not merely to refund excess rent or to compensate for the value of a minimum service not rendered, but for double the actual damage or $50, whichever may be greater, or, at the tenant's option, to a rescission of his lease.

■ The cause of action is founded on the statute and the tenant may not minimize the liability thereby created by suing for mere reimbursement upon a theory that he may ignore the remedy given by the statute and avail himself of a common law action to recover what he was illegally required to pay. "The liability and the remedy were created by the same statute. This being so the remedy provided is exclusive of all others."[5] That Congress in enacting rent legislation during the present war emergency recognized the fixing of price ceilings as creating a definitely statutory right is evidenced in the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925(e), where the action for damages for a violation, substantially similar to that provided in the local act, must be brought within one year. It would seem clear that this limitation

[2] By Supplementary Amendment No. 3 (7 F.R. 7404) effective Sept. 17, 1942, the Administrator of the Office of Price Administration authorized an interim order fixing rents to be made immediately upon filing of an application.

[3] In Shane Bros. & Wilson Co. v. Barrett, 71 Ind.App. 331, 124 N.E. 780, 781, "as ordered out by me" was held to mean "when ordered out by me and in quantities ordered out by me." See also, McLean County Coal Co. v. City of Bloomington, 234 Ill. 90, 84 N.E. 624; Schroeder v. St. Louis Transit Co., 111 Mo.App. 67, 85 S.W. 968.

[4] Beasley v. Gottlieb, 131 N.J.L. 117, 35 A.2d 49.

[5] Pollard v. Bailey, 20 Wall. 520, 527, 22 L.Ed. 376. For other applications of the rule see: Fourth National Bank v. Francklyn, 120 U.S. 747, 7 S.Ct. 757, 30 L.Ed. 825; Stewart v. Baltimore & Ohio R. Co., 168 U.S. 445, 18 S.Ct. 105, 42 L.Ed. 537; United States v. American Bonding Co., 42 App.D.C. 268; Lindner v. District of Columbia, D.C.Mun.App., 32 A.2d 540.

could not be avoided by judicial recognition of a common law action brought after the year within the usual period of limitation. Moran, Receiver, v. Harrison, 67 App.D.C. 237, 91 F.2d 310, 113 A.L.R. 505, certiorari denied 302 U.S. 740, 58 S.Ct. 142, 82 L.Ed. 572.

The situation here is clearly distinguishable from that presented in the New York Housing Act cases,[6] where it was made a defense to an action for rent "that such rent is unjust and unreasonable." [258 U.S. 242, 42 S.Ct. 292, 66 L.Ed. 595.] It may well be said that within the range of fairness and reason there is a minimum and a maximum of reasonable rent which may be charged, and, as the court said in the cases cited, as to real estate, the provision "is as definite as the 'just compensation' standard adopted in the Fifth Amendment to the Constitution, and therefore ought to be sufficiently definite to satisfy the Constitution."

But in the act we now consider the excess charge is not based upon the degree or extent by which the rent charge exceeds a reasonable rent for similar property, which an owner may approximately ascertain, but is based upon a precise figure somewhere between the minimum and maximum which cannot be known until it has been determined by the Administrator. The injustice of imposing a rent ceiling as of one date, to be made known at a later date, is obvious, especially when the collection of an excess amount is visited with penalties which may proportionately be excessive. The amount as determined by the Administrator is not an exact computation but is his judgment based on his view of evidence before him which may result in a trivial difference in amount.

In regulating rents and prices of commodities during emergency periods, the policy of Congress has been to create definite ceilings either in the legislation itself as in paragraphs (a) and (b) of section 2, or by administrative action as in sections 3 and 4 of this act and in the Emergency Price Control Act of 1942,[7] and it has not been the policy to make such ceilings retroactive. In the legislation enacted during the First World War, considered in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65

L.Ed. 865, 16 A.L.R. 165, rents were fixed prospectively by a commission. In the present national act rents are fixed by the Administrator of the Office of Price Administration and in no instances have such ceilings been made retroactive. The reasons assigned by the Administrator for the adoption of this policy, as stated in the case of Mary J. McCormick, received the following comment in a recent decision of the Emergency Court of Appeals:[8]

"In Matter of Mary J. McCormick (Pike & Fischer OPA Serv. 602:5), a landlord filed a protest against the regulation itself for its failure to authorize retroactive relief under the adjustment provisions. The Administrator agreed with the protestant's interpretation that under the regulation as written no order adjusting a maximum rent could be given a retroactive effect, but denied the protest on the ground, as explained in his accompanying opinion, that there were good and sufficient reasons for making adjustments prospective only. This interpretation by the Administrator of his own regulation, which interpretation was made before any action was taken on the present complainants' petition for adjustment, is entitled to persuasive weight."

In the McCormick case it was said: "The Administrator believes and has determined that permitting *an order or adjustment* to have a retroactive effect in this protestant's or any other case would seriously jeopardize the effectiveness of this most essential program." Also: "The Administrator has determined and provided in the regulation protested against, and in all other maximum rent regulations, that no order adjusting a maximum rent should be given a retroactive effect."

■ In view of the impossibility of anticipating what the Administrator will determine the rent ceiling to be, the constitutionality of the section, if retroactive, would be subject to serious doubt. While the constitutionality of the section is not questioned here, it is our duty to adopt such a construction as will not lead to a conclusion that the statute is unconstitutional.

In considering the section of the Lever Act, 41 Stat. 297, making it unlawful "to

---

[6] Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L. Ed. 877; Edgar A. Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L. Ed. 595.

[7] Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, decided March 27, 1944.

[8] Goodman v. Bowles, Em.App., 138 F. 2d 917, 919.

make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries" it was held in United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045, that Congress had failed to fix a definitely ascertainable standard and that a violation could not be the subject of a criminal charge.[9] While this case was explained in Edgar A. Levy Leasing Co. v. Siegel, supra, as one dealing with a criminal charge, this limitation of the opinion was definitely rejected in A. B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589, where both cases were discussed. The court held that whether the question arises in criminal or civil proceedings the due process clause of the constitution invalidates any law which creates an obligation as to which there is no standard sufficiently definite to inform the party *in advance* concerning the limits of his rights.

Turning to the record it seems clear that the Administrator in determining the rent and minimum service did not contemplate that his action would have a retroactive effect. His order, supra, stated that the minimum service "shall be," and that the maximum ceiling rent "based upon said minimum service standard is hereby determined to be" the amount stated. The minimum service is plainly made prospective only, and the rent is expressly determined with reference to that future standard, non constat that the service theretofore rendered may have been greater or less. And assuming the validity of the argument that the rent ceiling is created by the statute and does not originate with the order, the same would be true of the minimum service standard, for the existence of each is dependent upon an interpretation of the one provision of the statute.

The remedy given by the act is for the violation of a maximum rent ceiling established by the act or by order of the Administrator. We are of the opinion that no maximum rent ceiling existed until determined by the Administrator, and that until then the rights of the parties were those fixed by their lease agreement.

Reversed.

CAYTON, Associate Judge (dissenting).

The problem does not lend itself to easy solution. But I think the fairer, safer answer, and the one more in harmony with the purposes of the Emergency Rent Act, would be to say that in circumstances like these a landlord must refund, without penalties, the rent he has received in excess of that later fixed by the Rent Administrator. I fear that the view adopted by my colleagues may encourage same landlords to "guess" exceedingly high in fixing rents on properties on which there had been no ceiling. Tenants in their desperation would agree to almost any terms in order to get a roof over their heads. And by the time the ceiling was fixed by the Administrator, the landlord would have received perhaps many months of excess rent. And, says the majority opinion, the courts have no right to order it refunded. This is no random situation. The Administrator tells us there are some 10,000 cases in this category. If the same rule is applied to all, a substantial part of the Emergency Rent Act will have been rendered nugatory, a premium will have been placed upon avarice, and inflation will have been encouraged.

The Administrator may be able to work out some plan of regulation which will solve this problem in an administrative way. But in the meantime we are by no means powerless to save the situation. The judgment should be affirmed.

---

[9] See also United States v. Capital Traction Co., 34 App.D.C. 592, 19 Ann. Cas. 63.