78 A.2d 674 (1951)
BRYANT
v.
ASTARBI.
No. 1004.
Municipal Court of Appeals for the District of Columbia.
Argued January 22, 1951.
Decided February 16, 1951.
Charles H. Quimby, Washington, D. C., for appellant.
Clifford C. Kaslow, and M. F. Mangan, Washington, D. C., for appellee.
Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.
CAYTON, Chief Judge.
Tenant Maria Astarbi sued her landlord for double the amount of rent overcharges *675 she claimed to have paid for an apartment during a period of more than four years, and for breach of minimum service standards. Some three and a half months after the action was commenced the landlord filed a suit against the tenant for possession of the apartment on the ground of non-payment of rent. The actions were consolidated for trial and heard without a jury. The court found for the tenant, awarding her $1225 which was double the difference between the lawful rent ceiling and the amount actually paid. The court also allowed an attorney's fee of $125. The claim for breach of minimum service standards was disallowed. In the possessory action there was a finding for the landlord against the tenant. This appeal is brought by the landlord.
One of appellant's contentions is that the finding is unsupported by the evidence. This makes it necessary to refer to the evidence in the record.
Tenant testified that the furniture was in a dilapidated condition; that the bed was broken down, the mattress was moldy and stained; that one of the chairs was sagging, falling apart and dirty; that a certain chair (which landlord described as a valuable black Spanish chair) was an "atrocity" and was "impossible;" that the lamps sparked and she was afraid of them. She testified that soon after moving into the apartment she had the janitor remove the chairs, lamps, and a table and replaced them with new furniture of her own, including a studio couch, Hollywood bed, two upholstered chairs, about six other pieces of furniture and some smaller articles. Later, "around 1949" when she thought she might move elsewhere, she sold these articles to the landlord. According to the record she also testified thus: "She described the apartment in question as consisting of a large room in a very old house. There were pipes going across the ceiling. It used to be the kitchen of an old house. Plaster was falling down. The walls were watersoaked and when it rained, the rain came through the ceiling. The water to all pipes in the house had to come through her bathroom. These pipes are old and water keeps dripping, leaving a permanent impression on the floor. It is necessary for her to leave pans under the leaks." The testimony just quoted was not contradicted by landlord. Nor was it disputed that on the statutory freeze date, January 1, 1941, the apartment rented for $55 per month, and that landlord collected from tenant $67.50 per month during the 49 months of her tenancy.
The statement of proceedings and evidence is rather equivocal in its recitation as to what was said by the tenant on cross-examination, as to whether the apartment was rented as furnished. That part of her cross-examination is reported in the statement as follows: "On cross-examination, counsel for Defendant, Wallace Bryant, asked Miss Astarbi, `Did you rent the apartment furnished or unfurnished?' She replied, `Well, he called it furnished.' Counsel for Wallace Bryant said, `No, what did you rent  an apartment furnished or unfurnished?' Miss Astarbi replied, `Well, I did not consider it furnished.' Counsel for Wallace Bryant then asked again, `No, not what you considered itdid you rent the apartment furnished or unfurnished?' To this last question Miss Astarbi answered, `Well,furnished.' Counsel for the Plaintiff, Miss Astarbi, denies that Miss Astarbi ever gave Defendant Bryant's attorney an unequivocal answer."
The landlord said that he lived in the premises prior to renting it to the tenant, and claims that in itself shows the premises were furnished and habitable; that he himself considered it furnished; that he thought the furniture was "good," and some of it he described as antiques. He described the apartment as containing studio couches, overstuffed chairs, lamps, desk, tables and a valuable black Spanish chair. He admitted removing an antique sideboard but claimed he replaced it with an antique mahogany chest of drawers. He said that he bought from the tenant "maybe * * * six months ago" for $150 various furnishings she had purchased and placed in the apartment.
The trial court made careful findings of fact and conclusions of law. The particular finding to which objection is made is that the landlord had failed to sustain *676 the burden of proof on his defense that the premises as rented to the tenant at the increased rental constituted new housing accommodations. We hold there was sufficient evidence to sustain this finding. As was said in Delsnider v. Gould, 81 U.S. App.D.C. 54, 154 F.2d 844, housing accommodations under the Rent Act are a combination of real estate, all personal property, all facilities, and all services connected with the use or occupancy for which rent is payable, and unless the evidence as to the creation of new housing accommodations is compelling one way or the other, the question becomes one of fact. Here there was no evidence that any new facilities or services had been furnished by the landlord, and the evidence as to furniture was such, in our opinion, that it did not compel a finding that new housing accommodations had been provided.[1]
Another assignment of error relates to the refusal of the trial judge to admit certain evidence. A witness from the Office of Rent Control had testified as to earlier proceedings filed by the landlord in that office. He also testified that effective June 30, 1950 the ceiling on the apartment in question, furnished, was fixed at $70 per month. The record does not show that this evidence was formally stricken but does recite that the judge ruled that under our decision in Moore v. Coates, D.C. Mun. App., 40 A.2d 68, the new ceiling would not be retroactive. With that ruling we agree. Since the only period involved in this litigation ended in February 1950, any testimony as to a higher ceiling fixed four months later would be immaterial. Even if such evidence were to show the condition of the apartment in June 1950, it would have no bearing on the condition in January 1946 when the tenant took possession, especially in view of testimony on both sides that after that date some furniture had been moved out and replaced by new furniture purchased by the tenant. Since the tendered evidence had no probative value, the judge was right in refusing to consider it.[2]
Appellant also says the trial judge erroneously refused to permit him to plead the statute of limitations to such part of the claim as was more than three years old when the suit was filed. In the first place, it does not sufficiently appear from the record that the landlord ever pleaded or offered to plead the statute of limitations. In his brief he concedes that he "cannot now maintain that he asked for permission to plead the statute of limitations during the time of the trial." But he contends that he did bring the matter to the court's attention during trial. As to this the record recites only that at a point late in the trial he made the statement that plaintiff "cannot get anything beyond the Statute of Limitations, anyhow." The tenant's counsel objected that the landlord had not pleaded the statute of limitations and the court observed that the statute of limitations should be pleaded affirmatively. The record recites that counsel made no motion for leave to amend to plead the statute affirmatively, and that he did not in any other manner ask leave of court to plead the statute. Rule 8(c) of the Municipal Court, based on Fed.Rules Civ.Proc. Rule 8(c), 28 U.S. C.A., requires that the defense of limitations be set forth affirmatively. This was not done in the pleadings nor was any mention made of it until late in the trial when the matter of computations was being discussed. While the trial court might have invited counsel to file a formal plea of limitations, there was no duty on it to do so. And we have ruled that the statute "cannot be availed of by a party who fails in due time and in proper form to invoke it."[3]
*677 Appellant relies on Lustine v. Williams, D.C.Mun.App., 68 A.2d 900, in which we said that the general three year statute of limitations applied to actions of this kind. But we did not say that the statute was automatically invoked.
Affirmed.
NOTES
[1] This is generally in line with our holding in Turner v. Bowman, D.C.Mun.App., 68 A.2d 231.
[2] The record shows that the Rent Administrator granted an increase on March 21, 1950 basing it on the ground that "the operating and maintenance costs and expenses borne by the landlord including taxes and water rent have increased substantially and form a proper basis for adjustment * * *." There was no mention that this increase was based even in part on furnishings. It would therefore seem that the later increase, based in part on furnishings, related to furnishings supplied after March 21, 1950.
[3] Turner v. Bowman, D.C.Mun.App., 68 A. 2d 231, 232.